## Pettibone et al. v. Smith, Appellant.

·[Marked to be reported.]

*Taxes and municipal assessments, difference between.*

In a general way a tax is an impost upon the citizen for the support of the government, and a municipal assessment is a contribution levied upon the ownership of land to defray the expense of its improvement. In some cases before the courts this distinction has been observed, in others not, depending upon the character of the matter for construction, whether a contract or statutes.

*Contracts—Statutes—Taxes and assessments—Exemptions.*

The rule applicable to the interpretation of statutes exempting religious and charitable properties from taxation, to the effect that the word taxes includes assessments for benefits, does not apply to a contract in a coal lease for the payment of taxes. A general purpose to relieve from all burdens may well be inferred in such enactments, upon grounds of a public character or of general policy, where such an intent would be inapplicable to the reading of a private contract.

*Coal lease—Covenant to pay taxes, etc.—Landlord and tenant.*

A covenant in a coal lease providing " that the said lessee shall pay all and every the United States, state and local taxes, duties and imposts on the coal mined, the mining improvements of every kind and the surface and coal land itself," does not include a municipal assessment to defray the cost of building a sewer and to provide for the cost of grading a street.

Argued April 13, 1892. Appeal, No. 420, Jan. T., 1892, from judgment of C. P. Luzerne Co., March T., 1892, No. 279,

for plaintiff on case-stated for municipal assessments under covenant to pay taxes, etc. Before PAXSON, C. J., STERRETT, GREEN, McCOLLUM, MITCHELL and HEYDRICK, JJ.

The case-stated agreed upon the following facts :

" Plaintiffs, residents of Wyoming, in Luzerne county, being the owners in fee simple of a tract of land in Scranton, Lackawanna county, containing 227½ acres conveyed by indenture of coal lease to William T. Smith, defendant, who was a resident of Scranton, the coal under said land and a part of the surface, which said coal lease was dated Oct. 15, 1887, and duly recorded. The term within which 'all the coal' was to be removed was fifteen years, and a new lease has since been executed dated Dec. 3, 1884, to take effect April 1, 1893, and continue until all the merchantable and practically mineable coal is exhausted; said first mentioned coal lease made a part of this case-stated. The part of the surface of said land not designated for the purposes of mining and preparing the coal has been plotted into lots which have been offered for sale by plaintiffs. Such lots belong to plaintiffs. Defendant has no control over the same, and they are occupied not by him. But lots one, two, three and four in block four on North Main avenue, hereinafter referred to, are occupied by defendant for his air shaft and fan house and are included in the surface designated in said coal lease 'for the necessary purpose of mining coal and depositing coal-dirt, culm or slate.' All of said surface at the termination of the coal lease reverts to the lessors, the plaintiffs. 'Plaintiffs reserve the right to the culm pile, coal-dirt or waste, and to dispose of or remove at their option and to have free access to the same.' It was further agreed therein that up to April 1, 1883, the lessee should pay (section sixth) 'all the state and local taxes upon the mining improvements used by him including therein the ground occupied by dirt and culm piles, and also the United States and state imposts or taxes now imposed or which may hereafter be imposed on the coal mined. And also that he will pay (in addition to those enumerated above) one half part of all the taxes, state and local, now assessed or which may be assessed on the property aforesaid including therein the one half part of the taxes assessed upon the coal in the ground.' Also, (section four-

teenth) 'that if at any time the said lessee shall, with the permission of the lessors, occupy the surface of any of the land hereby demised, the said lessee will fence such portion at his own expense and will pay the taxes thereon.' After April 1, 1883, the lease was continued under the same conditions except as altered in certain particulars, among which were that the lessee shall pay all and every the United States, state and local taxes, duties and imposts on the coal mined, the mining improvements of every description and the surface and coal itself.

" The city of Scranton is a city of the third class, incorporated under the Act of May 23, 1889, P. L. 277, which Act is made a part of this case-stated, and attention is directed to article 5, § 3, paragraphs 9, 10, 11. · Also article 15, §§ 20, 21 and 22.

" Said city has passed the following ordinances, viz.: April 20, 1891; file of common council No. 54, entitled 'An ordinance providing for the construction of lateral sewer on North Main avenue from Lafayette street to Mount Pleasant ravine.' This ordinance provided for a lateral sewer on North Main avenue, and assessed the cost of the same by the frontage rule on the lots abutting on said sewer. Section 2d of said ordinance reads as follows, viz.: ' Which said sum is hereby assessed against the lots and lands abutting on the line of said lateral sewer according to the feet frontage they may have thereon.' Said ordinance in full hereto attached.

" On the land in question there was the following amounts assessed, to wit: On ' Block 4, Lots one, two, three and four.' ' Name of owner, William T. Smith.' ' Front 180 feet.' ' Cost of sewer, $352.17.' Said lots abut on North Maine avenue, and are the lots above referred to as used by defendant for air shaft and fan house, and duly designated for mining purposes in his coal lease. The said sum is the amount properly assessable against said lots.

" The sewer is not connected with the mining operations of defendant or used by him in fact.

" Also the following ordinance: Dec. 2, 1890; file of common council, No. 36, 1890, entitled, 'An ordinance providing for the grading of Lincoln avenue from Lafayette to Pettibone street, and making an appropriation therefor.' Section 2d of said ordinance is as follows, viz.: ' The cost and expenses of

said work is hereby levied and assessed upon the property bounding and abutting on the portion of the said avenue proposed to be graded in the names of the owners as contained in the schedule hereto attached.' Said grading having been completed, the following amounts were assessed on the land in question in this case, to wit : ' Swetland Estate ; Lot 1, block 20 ; frontage 56 feet ; cost $23.49.'

"Also ordinance file of common council No. 41, 1890, entitled, 'An ordinance providing for the grading of Garfield avenue in the 4th and 5th wards.' The language of this ordinance is the same as the preceding, with the exception of the name of the street (the ordinance is hereto attached) and the assessed cost is 'on lots 12, 13, 14, 15, 16, block 24 ; name of owner, Swetland Estate ; frontage of lot 12, sixty-five feet, and of each of the other lots fifty feet. Assessments, respectively $18.69, $14.16, $14.16, $14.16, $14.16, making a total of $75.33.' Said lots abut on Garfield avenue, and the amount assessed is the correct proportion of cost.

" The property mentioned in the ordinances is a part of the 227½ acres plotted into lots mentioned and described in the coal lease, but the property mentioned in the two last described ordinances is not a part of that surface designated for mining purposes, and is not occupied by defendant nor has defendant the right to occupy it. It is that part of the surface plotted by plaintiffs into lots and now held by them for sale or lease, the plaintiff not having the right to sell or lease the property mentioned in the first described ordinance until the expiration of the leases.

" The plaintiffs in this action having been compelled involuntarily to pay to the city the amounts of money above mentioned, the same being liens on the land, and the defendant having agreed to reimburse the plaintiffs if he were decided to be legally liable for the same or any part thereof under the indenture aforesaid, claim judgment against the defendant both for the amount assessed for sewer purposes against the lots occupied by defendant for mining purposes, $352.17 ; and the amount assessed for grading purposes on surface occupied by plaintiffs, $98.92 ; or a total sum of $451.09, with interest from 1891.

" The question of law for the decision of the court in this

122          PETTIBONE *v.* SMITH.          [150

case is : whether or not the sums assessed for sewerage under the first mentioned ordinance and the sums assessed for paving under the last two ordinances are local taxes, duties or imposts within the meaning of the coal lease aforesaid." Judgment to be entered accordingly.

The court below, RICE, P. J., entered judgment for the plaintiff in an opinion to the following effect, *inter alia :* Assessments for improvements are taxes, although more commonly called assessments : Stroud v. Phila., 61 Pa. 255 ; Hammett v. Phila., 65 Pa. 146 ; Washington Ave., 69 Pa. 352 ; Olive Cemetery Co. v. Phila., 93 Pa. 129 ; Erie v. Church, 105 Pa. 278 ; Centre St., 115 Pa. 247 ; Michener v. Phila., 118 Pa. 535 ; Phila. v. Church, 134 Pa. 207.

" In Pray v. N. Liberties, 31 Pa. 69, and N. Liberties v. St. John's Church, 13 Pa. 104, it was stated broadly that the assessments in question were not taxes, but it was not declared that they were not imposed by virtue of the power of taxation. If it had been so stated these decisions could not be harmonized with the later cases, or even older ones. All that they are authority for is, that the assessments were not taxes within the meaning of the Acts under consideration. Thus construed, the decision in the first case is not in conflict with any of the later cases, for, inasmuch as the legislature had provided a particular mode for enforcing the assessments in question, it was reasonable to presume that it was not intended that a provision relating to general taxes should apply. This principle was recognized in the case of Gilchrist v. City, 142 Pa. 114, but it does not imply that a charge imposed under the taxing power of the state is not, in the legal signification of the term, a tax. After a careful comparison of the statute construed in the second case (N. Liberties v. St. John's Church) and that construed in Erie v. Church it seems difficult to reconcile the two decisions." . . . .

" If in a statute exempting from taxation or from taxes (which are always construed strictly) the term is construed to include such assessments, we do not feel at liberty to hold that it should receive a different construction in a covenant, there being nothing in the context or in the surrounding circumstances to clearly show that it was used in a restricted sense.

" Furthermore this lease was drawn with skill and with man-

ifest regard for the legal signification of the terms used, and, it seems to me, the covenant under consideration is much stronger than that construed in Longmore v. Tiernan, 3 Pittsb. R. 62. It includes 'all and every' tax, whether United States, state, or local. Unless this is mere legal verbiage it means all taxes and every species of tax. Again, it includes not only taxes but duties and imposts. . . . Clearly the words 'duty' and 'impost' were not used in their restricted sense, but in a large sense of charges and impositions levied or assessed, or charged by virtue of the power of taxation. They are not less broad than the terms 'taxes, charges, and imposition,' which, in the case of Bleecker v. Ballou, 3 Wend. 263, (a case frequently cited in support of the proposition that such an assessment as this is not a tax) were held to include a claim for grading and paving."

Defendant thereupon appealed.

*Error assigned* was entry of judgment for plaintiff.

*Alfred Hand*, with him *William J. Hand*, for appellant.—If appellee's interpretation is correct, every lease which binds a tenant to pay all taxes subjects him to municipal improvements. The presumption is the landlord pays the taxes. With more force is this so where the landlord holds the property. A covenant to pay "taxes, duties and imposts" must be construed in the plain, ordinary and popular sense. The proper construction here is apparent (1) from the lease itself, § 6; and (2) from the statutes and ordinances.

By Acts of Congress of June 30, 1864, and March 3, 1865, " duties " were imposed on coal, and by Pa. Act of April 24, 1874, P. L. 71, a " tax " was imposed. Taxes, duties and imposts are used in their common acceptation of burdens and national and state imposts on personal property, i. e. on coal mined. Assessments for benefits are not burdens for public use : Boroughs, Taxation, p. 460–1; Longmore v. Tiernan, 3 Pittsb. R. 67; Mayor's Case, 11 Johns. 77; Bridgeport v. R. R., 36 Conn. 262. See Dictionaries, Bouvier, Century and Webster, for definitions.

A liberal construction of a constitution or statute benefits everybody. A similar construction of a contract may wrong one of the parties. This distinction will harmonize the cases.

In Miller v. Lankard, 1 Pittsb. R. 75, the covenant was "to pay all taxes and assessment;" in Longmore v. Tiernan, 3 Pittsb. R. 62, "to pay all taxes." The first was held to cover paving and curbing; the latter, not. See also Phœnix Pottery Co. v. Griffin, Smith & Co.; especially the opinion of the lower court in 16 Phila. 569, for distinction between taxes and assessments. In Pray v. Northern Liberties, 31 Pa. 69, an assessment for paving was held not a tax, and this cannot be confined to the language of the Act of 1824, because the principle is fundamental. Greensburg Boro. v. Young, 53 Pa. 280, and Northern Liberties v. St. John's Church, 13 Pa. 104, recognize the same distinction. Hammett v. Phila., 65 Pa. 146, and Washington Ave., 69 Pa. 352, also recognize this distinction; the exact point in each case being the power of taxation, which is the point involved in Stroud v. Phila., 61 Pa. 255. See also Mt. Pleasant Boro. v. B. & O. R. R., 138 Pa. 365, especially pages 371, 372. In Olive Cemetery Co. v. Phila., 93 Pa. 129, it is said municipal assessments are not within the accepted meaning of taxation for state purposes. Northern Liberties v. St. John's Church, 13 Pa. 104, and Erie v. Church, 105 Pa. 278, are reconcilable when we remember that the new constitution and statute of 1874 placed churches and municipal property in the same category. A liberal construction then stepped in necessarily in exempting churches. The English cases are: Baker v. Greenhill, 2 G. & D. 435; 3 Q. B. 148; Jeffrey v. Neale, L. R. 6 C. P. 240; Tidswell v. Whitworth, L. R. 2 C. P. 326.

In the Act of May 23, 1889, P. L. 277, §§ 20-3, the distinction is made between assessments for benefits and general taxes, and a separate mode of collection is provided. Section 26 defines the owners to be affected. The ordinances provide for the collection from the owners of the abutting property.

The equities of the case are with us: Twycross v. R. R., 10 Gray, 293. The ordinary taxes benefit the tenant as well as the landlord, the assessments for local improvements are for the benefit of the landlord alone.

*Allen H. Dickson,* for appellee.—The law of landlord and tenant has nothing to do with the case. A coal lease is a sale of the coal: Lazarus's Est., 1 Adv. R. 238.

No distinction is made in the covenant between the land occupied by the defendant for his coal mining purposes, and the remaining surface under which he was mining. The purchaser of the coal paid the taxes on all the land, surface and coal. The covenant so to do was part of the royalty or price of the coal which he mined.

That the assessment in question is a local tax in its legal signification has recently been decided in McKeesport v. Fidler, 1 Adv. R. 389, in addition to the cases cited by the court below. That such is its popular, general signification is shown by every dictionary in the language : Webster, Century, Murray, Skeats. The cost of sewering or grading is popularly and correctly spoken of as assessed by the frontage rule of " taxation." The parties could not have had in mind the subtle distinction drawn by appellant between a tax and an assessment. Technical words have their legal effect in the absence of a contrary intent: Add., Cont., p. 181 ; Ellmaker v. Ellmaker, 4 Watts. 89. The constitution is to be construed according to the natural, popular meaning of the language ; so is a contract: Schuylkill Nav. Co. v. Moore, 2 Wh. 490; McWilliams v. Martin, 12 S. & R. 269. A *nomen generalissimum* is taken in its broadest sense unless constrained by the context: Wh., Cont., § 640. For example, an arbitration is a suit: Packard v. Hill, 7 Cow. 434 ; so is a partition: Grape St., 103 Pa. 121.

All the inferences favor our construction. The assessments were proceedings *in rem :* Emrick v. Dicken, 92 Pa. 78. The grantee was where he could look after the assessments. The word " duties " was clearly intended to cover all the obligations which the land owed the government. No other rational meaning can be given of a " local duty " in Scranton.

Longmore v. Tiernan was a case distinctly between landlord and tenant. It referred to taxes only and not " local taxes " nor to " all and every " the local taxes. The reasoning of that case is in direct conflict with the decisions of this court. The cases cited in Boroughs on Taxation do not sustain the text, except People v. Mayor, 4 N. Y. 419, which conforms with our cases in holding that such assessment is a tax.

OPINION BY Mr. JUSTICE GREEN, July 13, 1892.
The obligation of the defendant to the plaintiff is expressed

in these words : " That the said lessee shall pay all and every the United States, state and local taxes, duties and imposts, on the coal mined, the mining improvements of every kind and the surface and coal land itself."

The charge sought to be recovered in this action is a municipal assessment to defray the cost of building a sewer and another to provide for the cost of grading a street. The question at issue is whether the defendant, who is a lessee under a coal mining lease, with the right to take all the coal, or the plaintiffs, who are the owners of the fee, are bound to pay the assessments mentioned. It will be observed that it is nowhere provided in the lease that the defendant shall pay municipal assessments specifically as such. He is to pay taxes, and if taxes are the same thing as assessments he would, by necessary implication, be bound to pay assessments though they are not named in the lease. It is certainly true that we have several times decided that an assessment is a tax within the meaning of certain statutes exempting property from the payment of taxes. It is also true that the power to levy assessments is the taxing power, but it does not follow, and is not true in fact that an assessment is precisely the same thing as a tax, and it is entirely certain that a tax is not an assessment. In a general way a tax is an impost upon the citizen for the support of the government, and a municipal assessment is a contribution levied upon the ownership of land to defray the expense of its improvement. The fundamental distinction between taxes and municipal assessments has been many times judicially defined by this and other courts, and wherever the distinction has, in the circumstances of particular cases, required to be observed and enforced, it has been done, while in some of the cases where such a course has not been necessary to be observed, they have been treated as nearly or quite in common. A moderate review of the authorities will illustrate this.

In Pray v. The Northern Liberties, 31 Pa. 69, a scire facias was issued upon a municipal claim for pavement and curbstone laid in front of a city lot, and defence was made upon the ground that the provisions of the Act of 1824 for the collection of unpaid taxes had not been complied with. But this court held that the claim was not a tax and therefore was not affected by the Act of 1824, but could be collected as an as-

sessment under the Act of 1840. Coulter, J., said: "The assessment or charge for paving was not a tax, either technically speaking nor according to the purview of the Acts of Assembly on the subject. A tax is generally understood to mean the imposition of a duty or impost for the support of government. In that sense it is understood all the world over, as contradistinguished from a mere municipal or corporate charge for the improvement of property within the corporation or municipal bounds. This view of the case is fully sustained by the case of Sharp v. Speir, 4 Hill, 82, per Bronson, J.; and in 11 Johns. 77; and particularly in Bleecker v. Ballou, 3 Wend. 263. . . . . Nothing is more reasonable and fair than that the owners of property should be compelled, with their fellow-corporators, to pay for improvements in the streets, paving, etc., which is for the benefit of all, and not lie by and evade the payment of assessments for that purpose and yet enjoy the full benefit of the improvements."

In the Northern Liberties v. St. John's Church, 13 Pa. 104, the subject was presented in the form of a claim for exemption by a church property under the Act of April 16, 1838, exempting churches and burial grounds from taxes. In delivering the opinion Mr. Justice Coulter said: " And I think the common mind everywhere has taken in the understanding that taxes are a public imposition, levied by authority of the government, for the purpose of carrying on the government in all its machinery and operations; that they are imposed for a public purpose; whereas municipal charges are often for the benefit of lot holders on a particular street, and the assessment, as in this instance, induced by the request, made known according to their charter, of a majority of the inhabitants. The assessment or charge is an equivalent from the owner for the improvement made to the value of the property. Such assessments are not collected like public taxes, but generally, as in this instance, a particular mode of recovering the charge is pointed out by the law."

In Borough of Greensburg v. Young, 53 Pa. 280, it was said in the opinion, by Thompson, J.: " The assessment or charge against the defendant for the grading and paving in question was not a tax: Pray v. The Northern Liberties, 31 Pa. 69; and does not conflict with the limit upon the authorities as to the extent of tax they may lay in any one year."

In one of our most recent utterances upon this subject, Mt. Pleasant Borough v. Railroad Co., 138 Pa. 365, Mr. Chief Justice PAXSON said : " But municipal assessments differ from general taxation in many respects. The latter is the imposition of a duty or impost for the support of the government. In that sense it is understood all the world over as contradistinguished from a mere municipal charge for the improvement of property within the municipal bounds. Hence it was held in Pray v. The Northern Liberties, 31 Pa. 69, that a municipal claim for paving, etc., was not a tax within the meaning of the Act of February 3, 1824, and need not be registered in the office of the county commissioners. This was directly in the line of Northern Liberties v. St. John's Church, 13 Pa. 104, where it was held that the church was not exempt from a charge for laying water pipes, by reason of the Act of April 16, 1838, exempting churches and burial grounds from taxes. While a municipal assessment for paving, etc., is a species of taxation, and is the exercising of the taxing power of the commonwealth, conferred to a limited extent upon such corporations, yet it differs essentially from general taxation."

Thus, in our earliest as in our latest decisions, we have declared and enforced the radical difference between taxes, as such, and municipal assessments. It is not to be doubted that the cases of Washington Avenue, 69 Pa. 352 ; Olive Cemetery Co. v. Philadelphia, 93 Pa. 129, and City of Erie v. First Universalist Church, 105 Pa. 278, do decide that the assessment of benefits for municipal purposes, is a species of taxation, and that the power to make such assessments, when conferred by the legislature upon municipalities, is to be regarded as an exercise of the taxing power, but none of those cases presented the question involved in the present contention. In the last two of them exemption was allowed from municipal assessments, on the ground that the assessments must be regarded as a species of taxation. But in the Cemetery case the language of the charter was that the property " shall be exempt from taxation excepting for state purposes," and upon the construction of that language it was held that exemption must be allowed for all kinds of taxation, except taxation for state purposes literally, on the principle that an exception in a statute excludes all other exceptions. And in Erie v. Church, the lan-

guage of the exempting Act of 1874 was, from " all and every county, city, borough, bounty, road, school and poor tax." We held that the assessment must be regarded as a tax from the generality of this language, and because the property was included in the same category with court houses, jails and schoolhouses, which, by common consent, are regarded as not subject to any kind of tax or assessment. In none of the cases cited by the learned counsel for the appellee, and in none which appear in the opinion of the learned court below, did the question arise upon a covenant between private parties. In two of the cases cited for the appellant that precise question did arise, and was decided in conformity with the contention of the appellant in the present case. In Bleecker v. Ballou, 3 Wend. 264, it was decided that where a tenant took a lease of a village lot for twenty-one years, and covenanted to pay *all taxes, charges and impositions* which should be imposed upon the demised premises ; and during the term the premises were subjected to an assessment for pitching and paving a street, under an Act incorporating the village and authorizing such assessment, the tenant was bound by the express terms of the covenant to pay the assessment. The decision was put upon the ground that the words ' charges and impositions ' include assessments, but it was also held that the word *tax* would not include assessments. Chief Justice Savage said : " Had there been no decisions of courts upon similar covenants, I should think it clear that the parties intended precisely what the language of their contract imports ; that the lessee ran the risk of *all* taxes, charges and impositions. These are not words without meaning, nor can I suppose they were used as synonymous. They import that the landlord was to receive his rent and, during the term, was to be subject to no expense on account of the demised premises. . . . There is no doubt that the assessment in question was not a tax, that being a sum imposed, as is supposed, for some public object : 11 Johns. Rep. 77."

The covenant under consideration in the above case was that the defendant, " covenanted at his own proper costs and charges to bear, pay and discharge all taxes, charges and impositions which should be taxed, charged, imposed or assessed upon the demised premises or any part thereof." The decision followed the ruling of the same court, Supreme Court of New

York, in the Corporation of New York v. Cashman, 10 Johns. 96, where the language of the covenant included the words "assessments" and "payments," as well as duties, taxes and impositions. But it also recognized the distinction declared in the Matter of the Mayor, etc., of New York, 11 Johns. 77, in which a claim for exemption was made by some churches in New York city, to be exempted from an assessment for the opening of a street under an Act of 1813, which provided that no churches or schoolhouses, "should be taxed by any law of this state." The court held that the churches were not exempt because the word tax did not include assessments for benefits.

The other case above referred to is Longmore v. Tiernan, 3 Pittsb. R. 62, in the district court of Allegheny county in 1867, which, while it is not authority in this court, commends itself to our favorable consideration by the forcible and exhaustive reasoning of the opinion, and by the learning and ability of the eminent judge who wrote it, the late Justice Williams of this court. The very question involved in the present contention was at issue there. The action was brought by a lessor against his lessee for breach of a covenant in the lease as to which the court says : " In addition to the rent, the defendants covenanted and agreed to pay all the taxes that might be levied and assessed upon said premises for the last two years, except such tax as might be assessed to pay city or county railroad subscription indebtedness." An assessment of $737.68 was imposed on the premises within the last two years of the term to defray the expense of grading, paving and curbing the street, on which the property was situated, which the lessor paid after a judgment recovered against him and this action was brought to recover it from the lessee under his covenant in the lease. The court, after stating the question to be whether the covenant to pay all taxes, except the railroad subscription tax, included assessments for paving, etc., said : " The agreement is to be construed in accordance with the meaning and intention of the parties at the time they made it. What then did they mean and intend by the words 'all the taxes that may be levied and assessed.' In what sense did they use the word taxes? Did they use it in its common and ordinary acceptation, as denoting such impositions, rates and charges as are

made and levied for public objects and purposes; or did they use it as denoting any and all manner of assessments, impositions, burdens and charges whatever whether made or imposed for public objects or for mere local improvements? In ascertaining and fixing its meaning as used by the parties, we must presume that they used the word in its common and ordinary acceptation and meaning. As commonly used and understood the word 'tax' signifies a sum or rate imposed by governmental authority for a public object or purpose. An assessment under the paving Act to defray the expenses of improving a street is not commonly, if ever, called a tax. In common parlance it is usually called a 'paving lien,' and sometimes perhaps 'an assessment for grading and paving.' If then the parties used the word taxes in its ordinary and usual signification, it does not include the assessment in question." The learned judge then proceeded to examine the question both upon principle and authority at considerable length, and reached the conclusion that the word "taxes" in the covenant did not include the assessment even though *all* the taxes were to be paid and only one kind was excepted. The authorities were all considered and carefully reviewed.

The opinion meets with our entire approval, and although it was delivered before our recent exemption cases were decided we do not consider there is anything in them which ought to affect it. The question arose upon the interpretation of a contract between private parties. Of course the interpretation should be adjudged by the application of the rules which usually determine that class of cases. The meaning and intention of the parties as derived from the use of words which have a plain and ordinary signification is one of the surest guides to the interpretation of their contracts. Considerations of a different kind are applicable in the interpretation of statutes exempting religious and charitable properties from taxation. A general purpose to relieve from all burdens may well be inferred in such enactments upon many grounds of a public character or of general policy, when such an intent or sentiment would be entirely inapplicable to the reading of a private contract.

In this very case the assessment in question was made to defray the expense of constructing a sewer on the surface.

The coal lessee has no interest in it, or use for it, and can derive no benefit or advantage of any kind from it. It is constructed entirely for the benefit and advantage of the surface and the surface owner; moreover it is permanent and will continue in use long after the determination of the defendant's lease. Why should he pay for it, when in point of fact he has never agreed to such payment? Because it is a tax, says the lessor, and therefore is included within the burdens which the tenant agreed to pay. But it is not a tax literally, and nothing in the lease defines any expressed intent by either party that it should be paid by the lessee. To this it is replied that this court has said an assessment is a tax, or is to be considered as a tax, in a certain class of cases. But to that it can be well answered that this is not a case belonging to that class, and therefore the contract of the parties must be adjudged by the ordinary rules of interpretation, and, being so adjudged, all the authorities concur, and manifest legal principles require, that it should be declared that the defendant never agreed to pay the assessment in question either expressly or by any necessary implication.

The judgment of the court below is reversed and judgment is now entered for the defendant upon the special verdict with costs.