## In re TURPIN HOTEL CO.

### POWELL STREET INV. CO. v. SCOOFFY.

#### (Circuit Court of Appeals, Ninth Circuit. February 4, 1918.)

#### No. 3041.

1. BANKRUPTCY ⬤≈467—APPEAL—REVIEW—MATTERS SUBJECT TO REVIEW.

A finding of fact by the referee in bankruptcy, amply sustained by the evidence and affirmed by the District Court, will not be disturbed.

2. FRAUDS, STATUTE OF ⬤≈131(1)—LEASE CONTRACTS—MODIFICATION—STATUTE—"EXECUTED ORAL AGREEMENT."

A corporate lessee, in arrears, paid a portion of the rent in arrears and for the remainder executed notes, secured by indorsement; such notes ultimately being discharged by the indorser. The landlord orally agreed to accept a reduced rent, and for a considerable period accepted reduced payments in full discharge of the lessee's obligation. The agreement for reduction of the rent contemplated the lessee's execution of a new chattel mortgage. Held that, under Civ. Code Cal. § 1698, declaring that a written contract may be modified by an executed oral agreement, the agreement to reduce the rent must be deemed an executed oral agreement, precluding the lessor's subsequent recovery of the full rent reserved, notwithstanding the lessee's delay in the execution of the chattel mortgage contemplated, for the true consideration was the payment and securing of the rent in arrears.

3. FRAUDS, STATUTE OF ⬤≈131(1)—LEASE CONTRACTS—MODIFICATION—STATUTE.

Though the consideration for the modification of the oral agreement was a third person's indorsement of the lessee's notes, the validity of the agreement is not subject to attack on the ground that the Civil Code applies only to written contracts which are not required by the statute of frauds to be in writing.

Appeal from the District Court of the United States for the First Division of the Northern District of California; Maurice T. Dooling, Judge.

In the matter of the bankruptcy of the Turpin Hotel Company, a corporation. From an order of the District Court, affirming an order

of the referee in bankruptcy, disallowing the claim of the Powell Street Investment Company, opposed by L. J. Scooffy, as trustee in bankruptcy, the Investment Company appeals. Affirmed.

W. S. Andrews and M. E. Harrison, both of San Francisco, Cal., for appellant.

I. I. Brown, Milton J. Green, Edwin J. Hanson, and Jerome B. Politzer, all of San Francisco, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. This is an appeal from an order of the District Court, affirming an order of the referee in bankruptcy in disallowing the claim of the Powell Street Investment Company against the Turpin Hotel Company, bankrupt, for any sum in excess of $5,500. The claim out of which the controversy arises is for rent of certain premises in San Francisco leased by the bankrupt, Turpin Hotel Company, from the Powell Street Investment Company. The findings of the referee are substantially as follows:

The Powell Street Investment Company leased the Hotel Turpin for a period of 10 years, expiring January 31, 1920, at a stipulated monthly rental of $2,500. On July 31, 1915, the Hotel Company was $14,000 in arrears on the rent. An adjustment of the indebtedness was then made by the Hotel Company, which paid to the Investment Company $5,000 in cash and gave six notes, of $1,500 each, payable at intervals of 30 days, indorsed by William Wilsie. Wilsie paid the first note, but, having failed to pay subsequent notes as they fell due, on January 16, 1917, the landlord, Investment Company, accepted a chattel mortgage on certain property belonging to Wilsie and surrendered to Wilsie all the unpaid notes. The Hotel Company paid to the landlord, Investment Company, $1,600 a month from August 1, 1916, to January 31, 1917. The receipts, which were given by the Investment Company, landlord, for such rentals, to the Hotel Company, read: "Received from Turpin Hotel Company $———, payment for rent on account." On April 4, 1917, the Hotel Company filed its petition in bankruptcy. No part of the rent for February and March, and up to April 4, 1917, was paid. The referee allowed $5,500 for rental of February and March, and up to April 6, 1917, inclusive, at the rate of $2,500. In December, 1916, the Powell Street Investment Company made a new inventory of the furniture and personal property in the hotel, and papers embodying a new agreement were to be drawn in December, 1916, providing the Hotel Company had paid in full the reduced rental of $1,600 per month up to that time.

The referee found that the rent receipts heretofore referred to, which were given by the landlord for rentals from August 1, 1916, to January 31, 1917, were not receipts "upon account," but were in full for rental for said months, and that the lease in question between the parties was modified as to monthly rentals, in that the monthly rental was reduced from $2,500 to $1,600 for the months from August, 1916, to January, 1917, inclusive, by an executed oral agreement.

These findings are made clearer by reference to the evidence, which

is included in the record, from which it appears that, just before the adjustment between the landlord and the tenant, the landlord had sued the tenant to foreclose a chattel mortgage made by the tenant to the landlord as security, and that there also seems to have been a suit brought by the landlord against the tenant, wherein the landlord attached certain property belonging to the tenant. Mr. Turpin, president of the Hotel Company, told him that the best that the directors could do for him was to reduce the rent to $1,600 a month up to the 1st of June, 1917, and $2,000 thereafter, and said that Savage told him that the receipt would read as "rent on account," because he did not wish other tenants, who were asking for reductions, to know the basis of the settlement being made; that Savage said he had the same agreement with another tenant; that he said to him, "My word is as good as my bond; you will find that I am all right." Savage also told him that he would have to have a new chattel mortgage and a new inventory, which would have to be paid for by the tenant; that in accordance with that understanding he (Turpin) proceeded within 20 days to take a new inventory, and paid for it, and turned it over to the Investment Company, but that no chattel mortgage was prepared and presented to him until about the latter part of December, 1916, and that he then objected to signing the mortgage, because it included property that did not belong to him; that he kept the mortgage submitted to him; that the representative of the Investment Company said that the papers would be corrected, but that no correction was made and that no new mortgage was ever executed; that it was understood that there was to be a rider to the lease pertaining to the reduction which had been agreed upon, but that the secretary of the Investment Company told him that the duplicate lease had been taken to the office of counsel for the Investment Company and had been lost.

The testimony of Savage of the Investment Company was that he told Turpin the Investment Company would give receipts on account for rent until the end of May, and that he said to Turpin, "We will then execute a chattel mortgage; we will then execute a modification to the lease, which will have a new chattel mortgage attached to it," the mortgage to be paid some time in January; that the receipts on account for rent would be given until the end of May, when Turpin was to get a receipt in full for rents from August 1st to May 31st; that the lease would then call for $2,000 a month; that the understanding was that the reduction of $900 a month was merely a contingent one upon Turpin completing his payments until May 31, 1917, and that on the 31st of May, 1917, he (Savage) was to give Turpin a written modification of the lease carrying a reduced rent to the end of the term at the rate of $2,000 a month, and that there was to be attached to the writing a chattel mortgage dated of that date, May 31, 1917, to secure the rentals for the balance of the lease; that this modified lease and mortgage were not to be executed "unless he (Turpin) kept good faith in our oral agreement"; that the mortgage contemplated was being prepared in November or December, 1916, but that as soon as Turpin "fell down in his agreement" the mortgage was "held up."

The notes indorsed by Mr. Wilsie were all paid about January or February, 1917, by the substitution of a mortgage executed by Wilsie and wife and accepted by the Investment Company. Mr. Wilsie in his testimony said that, in one of his conversations (in February, 1917) concerning documents which were to be drawn up, he was told by counsel for the Investment Company that Turpin's rent had been reduced to $1,600 a month, and that the arrangements were being made with that understanding. · He said that he indorsed the notes with the understanding that the Hotel Company owed the Investment Company $9,000 as back rent, and that the rent had been cut to $1,600 a month for the future, and that there was no other indebtedness due the Investment Company by the Hotel Company. It appears that the Hotel Company paid $1,600 for rental during September and a like amount during October, but that it did not pay the rental for November until the latter part of December, 1916, and that it was in arrears in January, 1917. There is also evidence that the Investment Company, in December, 1916, was taking an inventory of the furniture in the ·hotel, with the intention of making a new chattel mortgage, which, Savage testified, was not to be executed until about May 31, 1917. Turpin testified that there was no conversation concerning the execution of such a chattel mortgage as on the particular date of May 31st; that he had directed the persons in charge of the inventory to proceed to prepare the same for use in the chattel mortgage.

The contention of the appellant is that the actual oral agreement between the landlord and the tenant had not been executed. This contention is, of course, predicated upon the assumption that the parties agreed that a chattel mortgage would be executed and delivered, and that because of failure by the Hotel Company to execute and deliver a chattel mortgage as security for the payment of future rent, as called for under the modified lease, there never was an execution and full performance of the agreement made. The appellee, on the other hand, argues that the lessor accepted for a consideration $1,600 for each of the months from August, 1916, to January, 1917, in full payment, and that the rental reduction was not conditioned upon the payment of the reduced monthly rent up to May 31, 1917, but that the lower rent was granted in consideration of the agreed new adjustment and settlement of arrears of rentals, and that the agreements to make in the future a new chattel mortgage and lease rider were not essential to the allowance of any past concession of monthly rental.

[1, 2] The finding of the referee that the amount paid each month was accepted as payment in full for the month's rental is amply sustained, and, having been affirmed by the District Court, will not be disturbed by this court. In re Dorr, 196 Fed. 292, 116 C. C. A. 112. There is left the inquiry whether or not the reduction of $1,600 a month was conditioned upon the Hotel Company actually paying the reduced rent up to May 31, 1917. The referee in his certificate has stated the point, and after commenting upon the testimony of Mr. Savage, to the effect that the papers embodying the new agreement were not to be effective until June 1, 1917, and then only ·if the Hotel Company had paid the reduced rental in full up to that date, has not only expressly declined to accept Mr. Savage's version, but has stated that

the evidence of the taking of the inventory and the preparation of the papers supports Turpin's explanation of why the papers embodying the new agreement were not executed at the time the reduction in rent was agreed upon.

To this finding, supported by substantial evidence, and to the whole case upon its facts, there should be applied the principle recognized by section 1698, California Civil Code, that a contract in writing may be altered, either by a contract in writing or, as we have in the present instance, by an executed oral agreement. When the payments were accepted as rent in full for the month specified in the receipts, there was an execution of the essence of the oral adjustment of rental between the landlord and tenant. The agreement of the tenant to give at some subsequent time a new mortgage security was not a condition precedent to the reductions conceded and recognized, nor was it such an essential thing in the adjustment agreement that the omission on the part of the tenant to make such a mortgage and to deliver it to the lessor should be construed as failure in the execution of the oral agreement. The evidence of the circumstances connected with the delay in making the proposed new mortgage and lease rider, when considered with the acceptance of the payments of rentals in the reduced sums, strengthen the opinion that the matter of the giving of the mortgage was neither of the essence of the adjustment nor the consideration for the promise of the lessor to reduce the rental. The real consideration for the oral agreement was the settlement by obligation of Wilsie to pay $9,000 of back rent, which he agreed to do, with the understanding that rentals had been reduced. This was at least presumably a valuable consideration for the oral modification. The obligation by way of indorsement of notes was made for the benefit of the tenant, the maker of the notes, in favor of the landord, payee. It would seem that under the rule of the California decisions the Hotel Company could maintain action for the breach of the engagement of Wilsie. Hendrick v. Lindsay, 93 U. S. 143, 23 L. Ed. 855; Austin v. Seligman (C. C.) 18 Fed. 519; Washer v. Independent M. & D. Co., 142 Cal. 702, 76 Pac. 654.

[3] Appellant argues that section 1698 of the Civil Code of California, already cited, only applies to written contracts which are not required by the statute of frauds to be in writing. But, as we accept it as a fact that the receipts were for full payments of the months specified in them, and that the agreement of modification was as interpreted by the lower court, we do not think that the position is well taken. As bearing upon the point, Sinnige v. Oswald, 170 Cal. 55, 148 Pac. 203, McKenzie v. Harrison, 120 N. Y. 260, 24 N. E. 458, 8 L. R. A. 257, 17 Am. St. Rep. 638, Doherty v. Doe, 18 Colo. 456, 33 Pac. 165, and Jones on Landlord and Tenant, may be cited. Boyd v. Big Three Ranch Co., 22 Cal. App. 108, 133 Pac. 623, was upon such a materially different state of facts that it cannot be regarded as upholding appellant's contention herein.

In conclusion, our opinion is that the referee and District Court were right in their understanding of the evidence and of the legal effect thereof.

Affirmed.