### CARSTENS et ux. v. McLEAN.

### In re PATTERSON–MacDONALD SHIPBUILDING CO.

(Circuit Court of Appeals, Ninth Circuit. August 3, 1925.)

No. 4578.

**1. Landlord and tenant ⬅148(2) — Finding that agreement by lessee to pay "annual taxes" did not include special benefit assessments sustained.**

In claim by lessor against bankrupt for failure to pay a waterway district assessment, finding that lessee's agreement to pay the annual taxes did not include obligation to pay special benefit assessments, as represented by cost of local improvements and levied according to benefits received, *held* sustained, especially in view of referee's finding that such was the understanding of the parties.

[Ed. Note.—For other definitions, see Words and Phrases, Annual Taxes.]

**2. Landlord and tenant ⬅148(1)—Lessee entitled to recover payments of special benefit assessments.**

A lessee, who by pure mistake of fact has paid special benefit assessments supposing they were included in "annual taxes," which lessee was obligated to pay, is entitled to recover money so paid, even though negligent in making payment, in view of Rem. Comp. Stat. Wash. §§ 9418, 11270.

**3. Bankruptcy ⬅326—Trustee entitled to offset deposit made by bankrupt to guarantee lease.**

Where eleven months before end of term trustee of bankrupt surrendered premises to lessor, who accepted surrender and resumed possession, treating lease as terminated, trustee *held* entitled to offset against claim of lessor lessee's deposit to guarantee faithful performance which was to apply on rental of last six months of term, in view of payment by trustee for use and occupation of premises in addition to regular monthly payments.

**4. Bankruptcy ⬅467—Findings of referee, affirmed by District Court, conclusive.**

Referee's findings of fact on conflicting testimony, affirmed by the District Court, are conclusive.

**5. Bankruptcy ⬅340—Evidence held not to show agreement of trustee with lessor of bankrupt for retention by lessor of deposit.**

In claim of lessor against trustee in bankruptcy of lessee, evidence *held* not to show an agreement of trustee with lessor who accepted surrender before end of term, entitling latter to retain lessee's deposit guaranteeing faithful performance of lease.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Proceedings for the allowance of a claim of Thomas Carstens and wife against J. L. McLean, as trustee in bankruptcy of the Patterson-MacDonald Shipbuilding Company. A report of the referee reducing the claim was affirmed by the District Court, and petitioners appeal. Affirmed.

See, also, 284 F. 277, 281; 292 F. 700, 759.

Kerr, McCord & Ivey, Wm. Z. Kerr, and E. S. McCord, Jr., all of Seattle, Wash., for appellants.

Bronson, Robinson & Jones, of Seattle, Wash., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge. The appellants presented a claim against the bankrupt's estate, which was allowed in the sum of $898.48, whereas they contend that it should have been allowed in the sum of $7,616.70. The referee reduced the claim by disallowing (1) the item of $1,384.73 for the Commercial Waterway District No. 1 assessment for 1919 against the property which the appellants had leased to the bankrupt; (2) by offsetting against the claim the sum of $2,841.75, the amount paid by the bankrupt for such waterway district assessments for the years 1917 and 1918; and (3) by offsetting against the claim the sum of $2,500, the amount of a deposit made by the bankrupt when the lease was entered into, to guarantee the faithful performance of its terms. The court below affirmed the referee's report.

[1] The lease was for a term of 5 years, and it required the bankrupt to pay "the annual taxes" on the property. The appel

lants contend that this was equivalent to an obligation to pay all taxes including the Commercial Waterway District No. 1 assessment. We think that the term "annual taxes" as used in the lease had reference to taxes for general revenues for the purpose of maintaining and carrying on the government, and in which all property is assessed alike and no special benefits enure to any tax payer. The waterway district assessment represented the cost of local improvements, and they were levied according to benefits received. But whether or not such is the generally accepted meaning of the term "annual taxes," there can be no question of the correctness of the decision of the court below upon the question here presented, for, conceding that the term is ambiguous, the decision was based upon a finding by the referee upon the testimony of the parties to the lease that such was their understanding of the meaning of the words "annual taxes" at the time when the lease was executed. We accept that finding as conclusive, as did the court below. Illinois Central Railroad Co. v. Decatur, 147 U. S. 190, 13 S. Ct. 293, 37 L. Ed. 132; Chicago Great Western Ry. Co. v. Kansas City N. W. R. Co., 75 Kan. 207, 88 P. 1085, 12 Ann. Cas. 588.

[2] It is contended that it was error to offset against the appellants' claim the waterway assessments paid by the bankrupt for the years 1917 and 1918. The referee found, and the court below approved the finding, that the payments were made through mistake of fact, that the bankrupt paid the same in the belief that they constituted a part of the annual taxes assessed against the property, and that therefore the payments could properly be offset against the claim. The evidence was that there was nothing about the vouchers presented to the bankrupt for said tax payments to indicate that the amount thereof included any claim for local improvement assessment or commercial waterway assessment, and that the bankrupt had no such information from any other source, and did not understand at any time that it was paying commercial waterway assessments. Such being the evidence and the facts as found by the referee and approved by the court below, we see no ground for holding that the mistake was not purely a mistake of fact, and that the payments were not properly offset. That money so paid under mistake of fact is recoverable is well established (21 R. C. L. 164), and this although there was negligence on the part of the person making the pay-

ment (21 R. C. L. 167; Remington's Comp. Stats. of Wash. 1922, §§ 9418, 11270.

We find no support for the appellants' contention that they sustained prejudice by reason of the bankrupt's payment of the water way assessments, or merit in the suggestion that if the bankrupt had not paid the same the appellants might under the lease have taken advantage of its default and regained possession of the premises, for if, as we have found, the bankrupt was under no obligation to pay the assessments, its refusal to pay them would have been no breach of the terms of the lease.

[3, 4] Nor do we find that the deposit of $2,500, made by the bankrupt to secure performance of the lease, was improperly allowed as an offset. The lease provided that the money so deposited was to be "a guaranty" of the faithful performance of its terms on the part of the lessee, "said sum to apply on the rental of the last six months of the lease term." The referee found that on July 1, 1921, eleven months before the expiration of the lease, the trustee in bankruptcy surrendered the premises to the appellants, and that the surrender was accepted by them, and that they resumed possession thereof as their own and devoted it to their own purposes and treated the lease as terminated, and that thereafter, upon their petition, there was allowed and paid to them, as reasonable compensation for the use and occupation of said premises by the trustee, the sum of $7,352.89 in addition to the regular monthly payments in the amounts provided for by the lease. The finding is based upon the testimony of the trustee and one of the appellants and the correspondence between them, and, although some portions of the testimony are conflicting, we deem, as did the court below, the finding of the referee conclusive, he having heard the witnesses and observed their demeanor and their interest in the matter at issue. In re Dorr, 196 F. 292, 116 C. C. A. 112; In re Turpin Hotel Co., 218 F. 25, 160 C. C. A. 165; In re Chelan Land Co., 257 F. 497, 168 C. C. A. 501, 5 A. L. R. 557; In re Levinson (C. C. A.) 1 F.(2d) 851.

[5] But the appellants contend that they accepted the surrender on condition that they should be permitted to retain the deposit. The trustee denied positively that at any time did he agree to give up any of the rights that he had to the $2,500, and it is clear that he could have done so only by the order of the bankruptcy court. He admitted, however, that Mr. Carstens said: "You under-

stand you lose the $2,500 when they quit paying rent." He testified that the first attempt of the appellants to assert a claim to the $2,500 was when he filed objections to their claim. It was not disputed that no attempt had been made to use the $2,500 deposit as an offset against the reasonable rental value of the premises. Obviously, under the testimony, there was no agreement that the appellants should retain the deposit. The money had been deposited for the special purpose of guaranteeing the faithful payment of the rent, and it was to apply only on the rental for the last six months of the lease. The evidence fails to indicate that the minds of the contracting parties ever met in an agreement that the surrender was conditioned upon the retention by the appellants of the deposit so made. The rental due to the appellants was paid up to the time of the surrender, and, the deposit having been made solely for the purpose we have indicated and not for the payment of liquidated damages, the trustee is entitled to recover the same. In re Tanory (D. C.) 270 F. 872; In re Schiff (D. C.) 295 F. 575; Alvord v. Banfield, 85 Or. 49, 166 P. 549.

The judgment is affirmed.