Railway Co. v. Railroad Co.

THE CHICAGO GREAT WESTERN RAILWAY COMPANY V. THE KANSAS CITY NORTHWESTERN RAILROAD COMPANY.

No. 14,672    (88 Pac. 1085.)

SYLLABUS BY THE COURT.

1. WORDS AND PHRASES—"*Taxes.*" The word "taxes" has two well-recognized meanings, one inclusive and the other exclusive of special assessments for local improvements. Which meaning is intended where the word is used in a written contract must be determined by the context.

2. CONTRACTS—*Lease for 999 Years—Agreement to Pay Taxes— .Special Assessments for Local Improvements.* Where a company owning a line of railroad grants to another company a right to the joint use thereof for a term of 999 years in consideration of the payment of a stated annual sum, to be increased by interest upon any amount expended for permanent improvements . by the owner by joint consent, the contract further providing that the expense of maintaining the property shall be divided in proportion to the use made of it, and that "taxes on property jointly used shall be included in the cost of maintenance," the word "taxes" as so used .is to be construed as including such special assessments.

Error from Wyandotte district court; J. McCABE MOORE, judge. Opinion filed February 9, 1907. Affirmed.

*Miller, Buchan & Miller, Kimbrough Stone,* and *Frank Hagerman,* for plaintiff in error.

*Waggener, Doster & Orr,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: The Kansas City Northwestern Railroad Company is the owner of a line of railroad, including depots, terminal facilities and other property, with respect to which the Chicago Great Western Railway Company has certain rights under a written agreement providing that the latter company may use such property in common with the owner company for a period of 999 years, paying for such privilege a stated

annual sum, to be increased by interest upon any amounts expended for permanent improvements by the owner by joint consent, and that the expense of maintaining the property shall be divided between the two companies in proportion to the use made of it by each, to be determined by monthly estimates. The contract further provides that "taxes on property jointly used shall be included in the cost of maintenance." The sole controversy in the present case is whether the trial court erred in holding that the word "taxes" in the sentence quoted is to be construed to include assessments for local improvements made against the property specially benefited thereby.

There is of course a well-understood difference between general taxes levied for the support of the government and such special charges for betterments. The plaintiff in error forcibly contends that the word "taxes," alone and unexplained, must be deemed to refer only to the former. That it is often and properly used in that sense cannot be denied. But it is also employed with equal propriety, if not with equal frequency, with a broader meaning. The Century Dictionary says:

"In a more general sense the word includes assessments on specific properties benefited by a local improvement, for the purpose of paying expenses of that improvement."

In a note supported by pertinent citations, in volume 27 of the American and English Encyclopædia of Law, at page 579, it is said:

"It is now well settled that special assessments for local improvements are a species of taxes, being a burden on property for public purposes. The only substantial distinction between a special assessment and a general tax is that general taxes are based on value and subject to the constitutional rule of uniformity, which is not the case with special assessments."

As either the broad or the restricted meaning is consistent with approved usage, the question of which is

intended in a given case must be determined by the context. Statutory or constitutional provisions exempting certain classes of property from taxation are almost universally held not to refer to special assessments for local improvements. But this interpretation is said by Mr. Cooley to be "the most striking illustration of the rule of strict construction of exemptions," (1 Cooley, Taxation, 3d ed., 362), for, as the author continues, "these assessments are a legal exercise of the taxing power, and can only be justified on that ground." (Page 365.)

The most frequent occasion for the interpretation of the word as used in contracts has arisen in controversies over the provision found in leases that the lessee shall pay the taxes on the demised property. Cases of this character are collected in volume 18 of the American and English Encyclopædia of Law, at pages 652 to 653, and in volume 3 of the Supplement to the American and English Encyclopædia of Law, at pages 1010 and 1011. (See, also, Jones, Land. & Ten. § 415; 2 Wood, Land. & Ten., 2d ed., 957-959; 1 Taylor, Land. & Ten., 8th ed., § 397.) While there are some decisions to the contrary, of which *Cassady v. Hammer*, 62 Iowa, 359, 17 N. W. 588, is an instance, the weight of authority supports the view that such a covenant on the part of the tenant binds him to pay only general, and not special, taxes. The reason for this rule, however, is obvious. It is that benefit assessments are made against specific property expressly upon the assumption that it has received a corresponding increment in value, which redounds to the advantage of the owner. It is so unnatural and unfair that an expense of this character should fall upon one who has no interest in the property except a right to occupy it for the time being that he will not be deemed to have assumed it unless in virtue of language that admits of no other construction. This is illustrated by this extract from

the opinion in *Twycross v. Fitchburg Railroad Company*, 76 Mass. 293:

"In the light of these provisions, and without seeking to determine what possible burdens upon the estate may be included under the terms 'taxes and duties,' we think it quite clear that the expense of constructing the sidewalk was not a tax or duty levied or to be levied upon the premises demised. . . . The expense of paving the sidewalk is not only not within the letter of the contract, but not within the reason and equity of it. It is a permanent improvement of the estate, the benefit of which is to be found in the increased value of the estate and in the increased rent which it would permanently command." (Page 295.)

The force of this consideration manifestly varies inversely with the duration of the lease. As was said in *Harvard College v. Alderman of Boston*, 104 Mass. 470:

"In a covenant for the payment of taxes by a lessee, it is to be ascertained by construction what was contemplated by the parties in the use of the terms employed. Those terms are not necessarily to be taken in their strict legal signification. In a lease for years, especially if for a short term, containing a covenant that the tenant shall pay all taxes assessed upon or in respect of the premises during the term, it would hardly be supposed that the parties intended that the lessee should pay an extraordinary assessment laid upon the premises in view of the permanently increased value of the estate by reason of a public improvement in its vicinity, unless the terms used were such as to admit of no other construction. The contrary presumption is stronger or weaker according to the length of the term of lease." (Page 483.)

The same thought was thus expressed by Judge Williams in *Wilkinson v. Collyer*, 13 Q. B. D. (Eng.) 1, where the tenant contracted to pay "all rates, taxes, and assessments payable in respect of the premises during the term":

"This is not a question of mere words; it is a question of substance. Seeing that the term was for three years only, and the annual rent of the premises but

Railway Co. v. Railroad Co.

38*l*, I cannot think the parties could have contemplated that such a burthen as this should be imposed upon the tenant." (Page 8.)

In the present case the contract involved uses words appropriate to a lease, and the plaintiff in error applies that term to it. Whether such designation is accurate is wholly immaterial. If the instrument is a lease at all it is a lease for so long a time that it does not fall within the reason of the rule referred to. Its great duration cannot be said merely to diminish the force of the consideration stated—it does away with it altogether. A contract which is to endure for 999 years must be deemed to establish a permanent, not a temporary, condition. The argument which applies in the case of an ordinary lease is here reversed. Just as the courts lean away from a construction which imposes an obligation to pay for permanent improvements upon a tenant who can enjoy them only for a fixed period, so they should lean toward a construction that will compel one who shares their benefits for a practically unlimited time to share also their cost. If special assessments for improvements are not regarded as included within the term "taxes" as used in the contract, it results that all charges of this character accruing within a millenium are to be borne solely by one of two companies, each of which derives an equal advantage from them. Rather than attribute to one of the contracting parties so improvident an agreement we are constrained to hold that the word "taxes" was used in its broad and general sense and was intended to include special assessments.

The judgment is affirmed.