be held subject to arrest, conviction, and punishment. Another person erecting a building in violation of the provisions of the ordinance would be considered within his legal rights, notwithstanding the violation of the ordinance, because the Board of Appeals decrees that he may do so notwithstanding the ordinance. What would be considered a crime on the part of one person would be regarded as entirely legal and proper on the part of another person, merely because a board has so decreed. In my opinion, penal ordinances cannot be so framed.

For the reasons above stated, I dissent from the opinion of the majority of the court, and hold to the view that the plaintiff is entitled to the relief prayed for.

THE STATE OF OHIO *v.* THE UNION TRUST CO., EXR., ET AL.

(Decided June 20, 1927.)

*Messrs. Griswold, Green, Palmer & Hadden, Mr. Edward C. Turner,* attorney general, and *Mr. John A. Elden,* for plaintiff in error.

*Mr. T. G. Thompson,* for defendants in error.

VICKERY, J.   This cause comes into this court on a petition in error to the common pleas court of Cuyahoga county, and from the record we learn that Levi D. Johnson died on the 12th day of February, 1924, testate, leaving an undivided one-half interest in a parcel of real estate situated in the city of Cleveland, at the northwest corner of Fourth street and Prospect avenue, N. E.   The Union Trust Company, under the last will and testament, was appointed the executor of the estate of the said Johnson, and duly qualified as such.

The questions in the instant case grow out of the inheritance tax laws of Ohio, and involve the proper application of them to the instant case and the construction of the statutes relating to the same.

From the agreed statement of facts we learn that exceptions were filed to the finding of the probate court assessing an undivided one-half interest for inheritance tax purposes; that the probate court making the assessment adopted the rule laid down in Section 5342 of the General Code in capitalizing the income from said estate on a 5 per cent. basis. By such method the estate amounted, for taxation purposes, to $271,858. The Union Trust Company, as executor, took an appeal from the finding of the probate court to the common pleas court, where the case was heard upon an agreed statement of facts, and the common pleas court arrived at a different conclusion and assessed the property for taxation purposes at $222,620, as the sum upon which the inheritance tax should be figured. Whereupon the state tax commission filed a petition in error in this court.

We have heard the case upon the error proceedings, and the only question to be determined is the proper method for arriving at the value of the estate; that is, Did the probate court, or the common pleas court, adopt the right method?

The two statutes to which we must address ourselves are Sections 5341 and 5342, General Code, and, if the contention of the state tax commission is correct, Section 5342 is the proper statute, and not Section 5341.

From the agreed statement of facts we learn that Levi D. Johnson died seized in fee simple of an

undivided one-half interest in the real estate in question. That real estate was subject to a lease, which, we learn from the record, had been extended about 8 days before the death of Johnson, the original lease having 5 years still to run at a rental of $8,500 a year, which was renewed or extended shortly before Johnson died for a further period of 75 years, the whole lease having 80 years to run at the time of his death, 5 years at the rental of $8,500 per year and the sum of $15,000 per year for the remaining 75 years.

Now the probate court seems to have got the notion that, inasmuch as this fee was incumbered by a lease, the value of the property left by Johnson should be assessed for inheritance tax purposes under the rule laid down in Section 5342, General Code, which is, in part, as follows:

"The value of a future or limited estate, income, interest or annuity for any life or lives in being, or of any dower interest or other estate or interest upon which any estate or interest the succession to which is taxable under this chapter is limited, shall be determined by the rule, method and standard of mortality and value employed by the superintendent of insurance in ascertaining the values of annuities for the determination of liabilities of life insurance companies, except that the rate of interest shall be five per centum per annum.''

Now an examination of this statute, will at once convince one that it refers to incorporeal property, such as incomes, interests, or annuities, but we have nothing of this kind in this case. We do not have here a future or limited estate, income, interest, or annuity for any life or lives in being, or any dower

interest, or any estate or interest upon which an estate or interest is limited. We have simply an undivided one-half interest in real estate, the whole of said real estate being incumbered by a long term lease. It is perfectly clear, then, that this statute does not apply to the estate as left by Johnson upon his demise.

Section 5341, in so far as it relates to the present inquiry, is as follows:

"The county auditor shall be the inheritance tax appraiser for his county. The probate court, upon its own motion may, or upon the application of any interested person, including the tax commission of Ohio, shall by order direct the county auditor to fix the actual market value of any property the succession to which is subject to the tax levied by this subdivision of this chapter."

It is manifest from this section of the statute that it was the duty of the county auditor, upon having his attention called to the property, to appraise it at its true market value in money, and then report that finding to the probate court, from which finding the probate court should determine the amount of taxes that ought to be levied against the inheritor of this property as an inheritance tax.

As indicated in the briefs of the various parties, the quarrel seems to be between the methods used to ascertain the value. The county auditor capitalized the yearly income from this property on a 6 per cent. basis, and from his computation on that basis the value of the estate was determined to be $222,620. Therefore the question that we must determine, and the only question that we need to determine, is, Does Section 5341 or Section 5342

govern in the instant case? In other words, Does the fee, or does the income from the fee, descend by the inheritance?

We think that Section 5341 is unambiguous and gives a plain, decisive method for arriving at the value of the estate left by the decedent, subject to inheritance taxes. In other words, it is the duty of the county auditor to appraise the property at its true market value in money at the time of the devolution of the assessment of the tax. There is nothing in the statute which indicates the way or the manner in which this value should be arrived at. The method is left to the county auditor's discretion, and if he can arrive at the true value by capitalizing the income from the property on a basis of 6 per cent., and adopts that method in arriving at the true value of the estate, taking into consideration all the things which influence the value of the estate, such as location, the value of the surrounding property, the leasehold value, or the rental, if there be a leasehold and if there be a rental, or any other thing which influences the value of property, we say he could take them into consideration, and, after he has considered them all, he can form his opinion as to what the real market value of the property is, and, when he has determined that, he reports that to the probate court, upon which the probate court must determine how much inheritance tax must be paid by those who inherited the property.

This method, we understand from the arguments of counsel and from the briefs in this case, was adopted by the county auditor. Apparently men skilled in the value of down-town real estate were called in by the county auditor, and, after consider-

ing all of these elements, they reported the true value in money. They could just as well have reported the true value in money, or the market value, without detailing the method by which they arrived at their conclusions, and it would have been just as legal and just as binding. So, then, it was not because the county auditor adopted the capitalization at 6 per cent., instead of 5 per cent., that he is right and the probate judge is wrong.

If you will examine the brief of the state tax commission, you will see that it is urging that this property be assessed not as real property, but as an annuity, not as corporeal property, but as incorporeal property, and we do not think that that method is right.

We are referred to several cases, and it may be interesting to analyze those cases and show how they are not applicable to the instant case.

Take for example *Stephenson* v. *Haines*, 16 Ohio St., 478. This is quoted by the state tax commission's attorneys as an authority for the rule that they are contending for here. In that case, land was conveyed in fee subject to payment of annual sums by the grantee to the grantor. The question in that case was whether the grantee had more than a leasehold interest. From that case we learn that the grantor sold this property in fee to the grantee, reserving to himself a certain stipend to be paid, and providing that in case this stipend was not paid the rights of the lessee should terminate. This was nothing more than the conveying of a piece of real estate in fee which might be terminated by a condition subsequent, which might or might not happen. In any event, the fee had passed from the grantor

and the fee was in the grantee, subject, of course, to be defeated by the condition subsequent.

How unlike that is the instant case. In the instant case the fee of this property remained in Johnson, and the reversion belonged to Johnson, and it was simply incumbered by two leases, first, one for 5 years at $8,500, and, second, one for 75 years at $15,000 a year. This makes it entirely unlike the case in 16 Ohio St., *supra.*

Again, they cite the case of *Worthington* v. *Hewes & McCann,* 19 Ohio St., 66. An examination of this case will show, however, that this, although a 99-year lease, was a 99-year lease renewable forever. It is true that the lease contained provisions that there should be a reappraisal at intervals and higher rental should be charged, but the lease was a 99-year lease renewable forever. Such leases by all the authorities have always been regarded as transmitting to the lessee the fee, because 99 years renewable forever has been interpreted as the equivalent of a fee, and so that case ceases to be an authority when it is compared with the instant case, and is upon a parity, and follows the same rule laid down in 16 Ohio St., *supra,* to wit, that the fee had passed from the grantor, subject to be defeated by the failure to comply with the terms of the lease; the fee, however, being out of the lessor for all intents and purposes, the same as though he had absolutely transferred the fee.

In the instant case, one need but remark again that no such condition pertained. This was a lease, first, for five, and then for 75, years, a total of 80 years, and there is nothing in the lease which provides for its renewal, and the reversion as well as the

fee belonged to the lessor, and always remained with him, but out of the fee is carved a certain estate for years, and it depends upon the character of the lease as to whether the lessee has a good bargain or the lessor has a good bargain.

Suppose, for example, in the instant case, Levi D. Johnson had, in the first instance, made the lease run for the entire 80 years upon the basis of $8,500. It is manifest then that the lessee would have gotten a very good bargain, and that the lease may have been worth more than the fee. For example: Suppose at the corner of Fourth and Prospect where this property is located, the land had become so valuable that the lessee could have leased this property for a period of 75 years at $20,000 rental, and he had a lease for $8,500 — and I take it, in view of the history of long leases in Cleveland, that this is not a very violent presumption — then, if such a thing occurred, the lessee could have leased the remainder of his term for $20,000 a year, having all the charges carried by the sublessee, and all he would have to pay the lessor would be $8,500. In that case the lease would be more valuable than the fee. Would that tend to lessen or destroy the value of the property in Johnson for taxation purposes? Not a whit. The real estate would be worth just as much in one case as in the other. The income, however, would go to different persons. I take it, if the lessee, after the sublease had been executed, had died, his interest in that lease would not be real estate. It would be an annuity or an income that would be taxable under Section 5342, and the inheritance tax upon the lease might be more than the inheritance tax upon the fee.

A simple illustration of this kind will suffice to

show that it is not the income, but is the fee, that should be taxed in the instant case.

We are also referred to the case of *Ralston Steel Car Co.* v. *Ralston*, 112 Ohio St., 306, 147 N. E., 513, 39 A. L. R., 334. An examination of that case will show that it was sought to fix the interest of the lessee rather than that of the lessor. It was sought to provide for a dower interest of the wife of the lessee, and the question involved in the instant case was not in that case at all. In that case there was a 99-year lease renewable forever, and, as we have pointed out, the effect of such a lease was to create a fee, and the court there simply followed the uniform line of decisions that in such a lease a wife was endowable, but that is not a case parallel with the instant case, as I have already pointed out. Consequently it, as an authority, ceases to exist.

We have no quarrel with the Supreme Court in any of the cases cited by the state tax commission in the instant case, but we simply say that they are not applicable because the facts are entirely different.

We have, then, a plain, distinct, unambiguous statute, which provides that the county auditor shall appraise the decedent's property for the inheritance tax, at its market value, and the method that he adopts to arrive at that conclusion is utterly and absolutely immaterial.

We therefore, in reviewing this whole record, and giving weight to the arguments and briefs of counsel on both sides, are constrained to come to the conclusion that the decision of the common pleas court is right and that the appraisement of the county auditor, and not the method of appraisement of the probate judge, must be adopted. In other words,

Section 5341 is applicable to the instant case instead of Section 5342.

Having come to this conclusion, we think the judgment should be affirmed.

*Judgment affirmed.*

SULLIVAN, P. J., and LEVINE, J., concur.