DEUTSCH ET AL. *v.* FREY ET AL.

(Decided May 5, 1930.)

*Messrs. Rappoport & Rappoport,* for plaintiffs in error.

*Mr. S. Rotter,* for defendant in error Anna Frey.

*Mr. Fred Weiland,* for defendant in error Anna Bloom.

Ross, J.   This case comes into this court on error from the court of common pleas of Hamilton county, Ohio, wherein judgment was rendered in favor of Anna Frey, one of the defendants in error, and against Sidney Deutsch and Sarah Deutsch.   Anna Bloom, the other defendant in error, was dismissed.

The case was heard by the court without the intervention of a jury.

The plaintiffs in error were owners, and Anna Bloom was lessee, of certain property in the city of Cincinnati.   Anna Frey was the assignee of the lease.

The petition of plaintiff, Anna Frey, alleges the ownership of the property, the execution of the lease from the owners to the lessee, Anna Bloom, and the assignment of the lease by the lessee to the plaintiff below.   It is further alleged that the lease contained the following provision:

"The said lessee, for herself and for her heirs, executors, administrators and assigns, does hereby covenant and agree to and with the said lessors, theirs heirs and assigns, as follows, viz.:

"To pay the rent above reserved, as above specified; to pay all taxes, rates, charges and assessments of every kind that may at any time during this demise, be levied, rated, charged and assessed on said premises, or any part thereof for any purpose whatsoever beginning with taxes, rates, charges, and assessments, levied, rated, charged, and assessed in December, 1926, and thereafter."

It is further alleged that on September 29, 1926, a cash assessment for the improvement of Western avenue, in the city of Cincinnati, upon which the property involved was located, was levied against said property in the sum of $609.49, which amount was due and payable at the office of the city auditor in the city of Cincinnati on or before the 22nd day of October, 1926, and that the owners received notice thereof from the city auditor, with additional notice that if the assessments were not paid on or before October 22, 1926, the same would be immediately certified to the county treasurer, with 5 per cent. interest, payable in ten annual installments.

It is further alleged that the owners did not pay the amount of the assessment previous to October 22, 1926, and that said assessment was certified by the county auditor, and that by reason of said certification said assessment was increased to $777.11, and that the county treasurer made demand upon the plaintiff, assignee of the lease, for the first installment of the assessment, amounting to $91.42, and that the plaintiff below, the assignee of the said lease, was compelled to pay said installment because the county treasurer refused to accept the taxes, which, under the terms of said lease, said plaintiff below was required to pay, unless accompanied by

the installment of the assessment then due with 5 per cent. interest; and that the plaintiff assignee of said lease was therefore compelled to pay said installment, wherefor she claimed damages in the sum of $777.11.

Anna Bloom, the lessee, filed an amended answer, admitting the execution of the lease from the owners to herself, and the assignment thereof to the assignee, Anna Frey; and further alleged that under an agreement, dated March 18, 1926, she, acting through her husband and agent, P. Bloom, agreed to sell and convey said real estate for the sum of $31,000; and that under the terms of said contract Anna Frey agreed to assume said lease and to pay the balance of the purchase price then due, and that under the assignment mentioned Anna Frey assumed and agreed to comply with all terms, conditions, and obligations of the lease.

The lessee further admits that an assessment was levied against the premises on the 22nd day of October, 1926, and that the amount of same is as claimed in the petition, but denies that she is obligated under the terms of said lease or under the contract to pay said sum.

The owners, Sidney Deutsch and Sarah Deutsch, filed an answer in which it was admitted that they had executed a lease with a privilege of purchase to Anna Bloom, and that said lease was assigned to Anna Frey.

Said owners further admitted that an assessment for the improvement of Western avenue was, on the 22nd day of October, 1926, levied by the city of Cincinnati against the property described in the lease, and that the assessment with interest under

the customary ten-year installment plan amounts to $777.11. The owners further allege that on January 7, 1926, Sidney Deutsch, acting for himself and his wife, as owners of the property described in the lease, entered into a contract with P. Bloom, acting on behalf of Anna Bloom, under the terms of which contract said owners, Sidney Deutsch and Sarah Deutsch, agreed to pay the taxes on the property payable in June, 1926, and the purchaser Anna Bloom agreed to pay them thereafter, the exact language of said provision being as follows: "You are to pay the taxes due June, 1926. I am to pay thereafter. (Signed) P. Bloom."

It is further alleged that it was mutually understood between the parties that the lessee under said lease, Anna Bloom, was to assume and pay, in addition to the obligations stipulated in said lease, all taxes and assessments levied and assessed on and against said property after June, 1926, and that the lease was to be subsequently executed to conform to said understanding.

It is further alleged that neither on February 1, 1926, nor at any time, including June, 1926, were any assessments levied against said premises.

It was further alleged that Anna Frey agreed to assume and pay all taxes and assessments levied and assessed on the property after June, 1926, under the terms and conditions of the contract entered into between the lessee and the assignee, Anna Frey.

For a second defense the owners allege that they had no knowledge of the assessments at the time of the execution of the contract between them and the lessee, and that it was the clear intention at the time of the contract that all assessments levied or as-

sessed after June, 1926, were to be assumed and paid by the lessee, her heirs and assigns; that through inadvertence or mutual mistake of the owners as lessors, and the lessee, the mention and exception of assessments after June, 1926, as an obligation of the lessee, her heirs and assigns, were omitted from the lease; that the lease as drawn does not express the real intention of the parties, due to the mistake; and that said lease in conformity with the contract between the owners and the lessee, should have contained a provision excepting from the warranty clause of said lease any assessments levied against said premises after June, 1926.

A cross-petition was also filed by the owners, asking that the lease be reformed to conform to the contract.

Under an agreed statement of facts it was stipulated that a contract was entered into by the owners and the lessee under date of January 7, 1926, whereby the lessee contracted as follows: "You are to pay the taxes June, 1926. I am to pay thereafter. P. Bloom." (Lessee.)

That on February 1, 1926, the owners executed a lease with the privilege of purchase to the lessee, and it was provided in said lease that the lessee was to pay all taxes, rates, charges, and assessments that may during demise be levied, rated, charged, or assessed, beginning with taxes, rates, charges, and assessments levied, rated, charged, or assessed in December, 1926, and thereafter.

That on March 18, 1926, a contract was entered into between the lessee and the assignee whereby it was provided that said assignee should assume the lease, which contract contained the following lan-

guage: "You (Bloom) are to pay taxes due in June, 1926. I (Frey) am to pay thereafter."

That on April 13, 1926, the lessee assigned the lease to Anna Frey; that on April 21, 1925, the city of Cincinnati passed a resolution of necessity providing for the improvement of Western avenue; that on July 7, 1925, an ordinance was passed to proceed with the work; that on August 2, 1926, work was completed; on August 4, 1926, the total cost was approved; and on September 22, 1926, an ordinance levying an assessment was passed.

That on September 29, 1926, a bill for said assessment was mailed by the city auditor to the owners, said bill providing that said assessment was "due and payable at this office on or before October 22, 1926," and that thereafter the assessment was placed on the tax duplicate on the ten-year basis, and that the assignee had paid two installments of said assessment.

The evidence shows that upon receipt by the assignee of the bill for the assessment from the owners, the same was transmitted to the attorneys for the assignee, and by him returned to the owners, with the statement that the assignee looked to the owners to pay said assessment, all of which occurred in October, 1926.

The errors assigned are that the judgment is contrary to law and against the weight of the evidence, and that the court erred in the admission and rejection of evidence and in refusing reformation of the lease.

In the absence of any agreement between an owner and a lessee, the latter is not responsible for taxes and assessments upon the premises.

"As a general rule a tenant for a term of years is under no obligation to his landlord by reason merely of the relation of landlord and tenant to pay taxes assessed upon the demised premises, but since the taxes assessed against the demised premises are against the estate as a whole and may be enforced by a sale of the entire estate including the leasehold estate, the tenant is for his own protection authorized to pay all such taxes and assessments laid upon the premises for public improvements as may be demanded of him, and to charge them against the rent or recover the amount from the lessor." 16 Ruling Case Law, 812, Section 309.

"In the absence of agreement or special covenant, the duty to pay all state, municipal, and county taxes and assessments which during the term of the lease become chargeable upon the premises is, as a general rule, imposed by law upon the landlord." 36 Corpus Juris, 113, Section 753.

See, also, *Haggerty* v. *Maley,* 32 O. C. A., 505, 509, 35 C. D., 835.

While some authorities permit the fact that a lease is for a long term to change the rule as to the ultimate responsibility of the owner for assessments, we think that a term of five years is not sufficient to warrant the application of such an exception. Nor do we think the fact that the lease contained a privilege of purchase is controlling in the instant case. It was therefore incumbent upon the lessor, if he would relieve himself of liability for the assessment and charge the lessee with the payment of the same, to so provide in the lease and contract.

The question presented to us is whether the lessor

has used language in the lease to relieve himself of this burden, which would otherwise fall upon him.

Under the terms of the lease, the lessee agrees "to pay all taxes, rates, charges and assessments of every kind that may at any time during this demise, be levied, rated, charged and assessed on said premises, or any part thereof for any purpose whatsoever." These words are printed. They are followed by the typewritten words: "Beginning with taxes, rates, charges, and assessments levied, rated, charged or assessed in December, 1926, and thereafter."

The assessment in question was a fixed obligation against the property before December, 1926. A bill for the entire assessment had been sent to the original owners in October, 1926, and by them transmitted to the assignee of the lease, whose attorney returned it to the owners with a denial of liability on the part of the assignee.

There can be no question, therefore, even though the assessment could be later paid in installments, that such assessment was not assumed as an obligation by the lessee or assignee under the terms of the lease, for the reason that the assessment was such previous to December, 1926.

It is claimed, however, that the lease did not conform to the intention of the parties, as expressed in the contract between the owners and the lessee. The language of the contract was: "You (the owner) are to pay the taxes due in June, 1926. I (the lessee) am to pay thereafter."

The pleadings are constructed to secure a reformation of the lease, and to conform it to the contract. The court excluded evidence sought to be introduced

by the owner as to statements made at the time of the execution of the contract and lease. The record shows the following:

"Q. At the time the contract was signed, Mr. Deutsch, state whether or not at anytime anything was said about assessments?"

"Q. At the time the lease was signed, will you state whether or not anything was said about assessments?"

"Q. When you closed the contract for the sale of your property to Mrs. Bloom, had you then received any notice of any assessments against your property?"

"Q. At the time that lease was signed, had you received any notice of the imposition of any assessments against your property?"

"Q. During the negotiations when the lease was closed, was there any conversation indulged in by Mr. Rotter during your presence with reference to any protection of Mr. Bloom or Mrs. Bloom against any payment of any assessments?"

Answers to all of these questions were excluded, and exceptions noted, and the attorney for the owners made the following statement of what he would have proved by the excluded answers:

"Mr. Rappoport: Note an exception. I want the record to show that the purpose of the questions asked, to which objections were sustained and exceptions noted to the ruling of the court by counsel for Sidney and Sarah Deutsch, that at no time was the question of assessments mentioned by any parties to the transaction, including Mr. Rotter, at that time attorney for Mr. Bloom, and it was strictly the purpose and intention of the parties to take the prop-

erty in accordance specifically with the terms of the contract, Ex. A.  *  *  *

"Mr. Rappoport:  Let the record show that the purpose of this question was to show that at no time during the negotiations between Mr. Bloom and Deutsch or his wife was the question of the assessments brought up."

It is clear that the evidence which the trial court excluded would have shown that the question of the assessments was never discussed by the parties, and we have this situation:  The contract said nothing about assessments, the parties did not discuss the question of assessments at any time, and under the lease the lessee assumes assessments beginning with December, 1926.

If there be a reformation of the lease, as urged by the owners, the result would be that there would be no mention of assessments in the lease, no mention of assessments in the contract, or in the conversations by the parties at the time of the execution of the lease and contract.  What would be the result of such a situation?

Under the authorities the owners would be liable for assessments, not having limited their liability in any way.  Such being the case, they would not be prejudiced by the exclusion of the evidence which the owners stated would have shown that the subject of assessments was not considered by the parties, and, hence, should not have been mentioned in the lease.

Counsel for the owners evidently proceeded upon the theory that in the absence of agreement the liability for the assessment was upon the lessee. We conceive this not to be the law.

It appears that the attorney Rotter may have rep-

resented both the lessee and the assignee of the lease:

"The Court: How can you represent both parties?

"Mr. Rotter: If I did, they didn't know the difference at the time.

"Mr. Rappoport: He said he didn't know it until afterwards.

"Mr. Rotter: Well, he doesn't remember.

"The Court: Proceed, I shouldn't think you would want to represent both parties."

However, as it is admitted that the assignee assumed all the obligations of the lease, such double representation can have no bearing upon the intention of the parties, so far as the owners and the lessee are concerned.

It is further urged by counsel for the owners that the word "taxes" in the contract includes assessments. This construction has been adopted by some authorities, but there is equal authority to the contrary. In any event it would require evidence to show that such construction was intended by the parties. The words "taxes" and "assessments" are not synonymous. It would only be where the manifest intention of the parties required the construction, making the words identical in meaning, that they would be so considered.

It is claimed that the owners were prevented from proving that it was the intention of the parties that the word "taxes" should include assessments. We find in the record no attempt to introduce such evidence, or any offer to produce same. The questions to which answers were refused, and the offers on the part of counsel as to what would be proved, as we

have above stated, are conclusive that the matter of assessments was not discussed; the only mention thereof being in the lease, and the clause covering assessments therein relieved the owners from responsibility for assessments, "beginning with December, 1926." The owners specifically pleaded that they had no knowledge of any assessments at the time of the execution of this contract with the lessee. A proper reformation of the lease conforming to such facts, if they existed, would be to relieve the lessee from an obligation to pay even future assessments.

We hold, therefore, that construing the language of the lease as to assessments, or accepting the owners' view that the lease should contain no reference to assessments, the assignee of the lessee must recover for the installments of assessments paid by such assignee for his own protection, and on behalf of the owner, and that neither the lessee nor the assignee assumed responsibility for the payment of the assessments levied upon the property prior to December, 1926.

The judgment of the court of common pleas of Hamilton county is affirmed.

*Judgment affirmed.*

CUSHING, P. J., concurs.

HAMILTON, J., dissenting. I cannot concur in the judgment in this case.

The lease in question was for a term of five years with the option of purchase for the sum of $25,500, less the annual payments of $500, provided for in the lease. At the time the lease was executed the street improvement was in progress, and well on the way

toward completion. The improvement was completed and the assessing ordinance was passed in October, 1926. While it is true that notice of the amount of the assessment under the ordinance was sent to the owner, it was not at that time a lien on the property. This notice gives the owner the option of paying in cash. If not paid in cash, under the law and the ordinance, the assessment is made payable in ten annual installments, and thereupon becomes a lien upon the real estate.

The first installment must, of necessity, appear on the duplicate for the first time in December, 1926, or thereafter.

The covenant in the lease is that the lessee agrees "to pay the rent above reserved, as above specified; to pay all taxes, rates, charges and assessments of every kind that may at any time during this demise, be levied, rated, charged and assessed on said premises, or any part thereof for any purpose whatsoever beginning with taxes, rates, charges, and assessments, levied, rated, charged, and assessed in December, 1926, and thereafter."

There is some ambiguity in this covenant, in that in the first part the lessee agrees to pay "all * * * assessments of every kind that may *at any time* during this demise, be levied, rated, charged and assessed," while the latter part of the covenant provides, or pay "any part thereof for any purpose whatsoever beginning with taxes, rates, charges, and assessments, levied, rated, charged, and assessed in December, 1926, and thereafter."

This ambiguity was subject to explanation by oral evidence. There was oral evidence offered tending to show the intention of the parties as to the pay-

ment of these assessments, and, while this evidence was tendered on the proposition of a reformation of the contract and lease, as against the general objection it was admissible. It being admissible for any purpose, it was error for the court to exclude the evidence under the general objection.

However, taking the facts as they appear from the record, that the improvement was well on its way to completion at the time the lease was made, it being a long-term lease with an option of purchase, and the lessors undertaking to protect themselves from the payment of taxes and assessments, and that the first possible collection of assessments could occur only in December, 1926, or thereafter, which was the time mentioned in the latter part of the covenant, I am of opinion that the reasonable interpretation of the covenant is that the lessee obligated herself and her assigns to pay the assessments in question.