68 N.J. Super. 110 (1961)
171 A.2d 370
ARTHUR EFROS AND JULIE EFROS, HIS WIFE, PLAINTIFFS,
v.
MARY RUSSO AND JOSEPH RUSSO, HER HUSBAND, AND MAJO, INC., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 26, 1961.
*111 Mr. Harold Kaplan argued the matter for the plaintiffs.
Mr. Owen B. Pearce argued the matter for the defendants.
MARIANO, J.S.C.
Plaintiffs-lessees in this declaratory judgment proceeding seek judicial construction of a covenant contained in a written lease agreement and declaration of their rights thereunder.
The single question presented is whether a special assessment is a tax within the meaning of the term "all taxes," as used in the agreement.

FACTS.
On or about April 2, 1956 plaintiffs, for an annual rental of $3,000 leased from the defendants a certain unimproved tract of land located in Wall Township, Monmouth County. The initial term was for 52 years, with an option to renew on the same basis for an additional period of 23 years.
The covenant in question reads as follows:
"The said party of the second part, [plaintiffs-lessees] in addition to the above rent, covenant to pay `all taxes' on said premises during the term of this lease and any renewal or renewals thereof."
*112 There also appears in the agreement the following covenant:
"At the expiration of said term or expiration of this lease the said tenant will quit and surrender the premises hereby demised in as good a state and condition as reasonable wear and tear thereof will permit, damages by the elements excepted."
Subsequent to the entry into the said lease agreement plaintiffs constructed a store building on the leased premises at a cost in excess of $150,000 which, on April 26, 1956, they rented to the Great Atlantic and Pacific Tea Company, Inc., (A & P) for a term of ten years, at an annual rental of $22,800. This lease agreement contained the following provision:
"That the said lessor [plaintiff] shall pay all taxes, assessments and other charges imposed upon the premises hereby demised."
In 1959 the Township of Wall installed a water system and levied a special assessment against the demised premises for a portion of the cost thereof. At oral argument it was stated that the amount of said assessment was approximately $4,000. The period of usefulness of said water system is 40 years.

LAW.
"Taxes," as the term is generally used, are annual, recurring, pecuniary burdens imposed by legislative authority upon individuals or property to support the government. The word "taxes" brings to mind annual exactions to defray ordinary expenses of the government in the promotion of the general welfare of the municipality, county, state or country.
"Assessments" are those special and local impositions upon property in the immediate vicinity of the municipal improvements which are necessary to pay for the improvement and are laid with reference to the special benefit which the property is supposed to have derived therefrom. Cirasella *113 v. Village of South Orange, 57 N.J. Super. 522 (App. Div. 1959).
There is a clear and manifest distinction between taxes and assessments. See 1 Cooley on Taxation, sec. 31, p. 105 (4th ed. 1924). To emphasize the distinction reference is made to Illinois Central Railroad Co. v. City of Decatur, 147 U.S. 190, 202, 13 S.Ct. 293, 37 L.Ed. 132, 136 (1893); Blake v. Metropolitan Chain Stores, 247 Mich. 73, 225 N.W. 587, 63 A.L.R. 1386 (Sup. Ct. 1929); Schmidt v. Schmidt, 80 N.J. Eq. 364, 371 (Ch. 1912).
The majority of American cases assent to the rule that where the agreement is restricted to the word "taxes," or modified terms to that effect, as "all taxes," the lessee is not bound to pay for special assessments against the demised premises. See Annotation 63 A.L.R. 1387, 1392 (1929).
The reason for the general rule obviously is that benefit assessments are made against specific property expressly upon the assumption that it has received a corresponding increment in value which redounds to the advantage of the owner in the form of increased value of the reversion and increased rent which can thereafter be demanded. Also, it is unnatural and unjust that an expense of this character should fall upon one who has no interest in the property excepting the right to occupy it for the time being.
The force of consideration for the general rule manifestly varies inversely with the duration of the lease. As a result some authorities make a distinction between short and long term leases in determining whether a lessee's covenant to pay taxes includes a special assessment. The great length of the term is considered a reason for holding that the special assessment is within the covenant since the lessee will derive the chief benefit from the improvement. See Annotation 63 A.L.R. 1392 (1929); 12 Ann. Cas. 591 (1909).
In President, etc., of Harvard College v. Board of Aldermen of City of Boston, 104 Mass. 470, 483 (Sup. Jud. Ct. 1870), it was said:
*114 "In a covenant for the payment of taxes by a lessee, it is to be ascertained by construction what was contemplated by the parties in the use of the terms employed. Those terms are not necessarily to be taken in their strict legal signification. In a lease for years, especially if for a short term, containing a covenant that the tenant shall pay all taxes assessed upon or in respect of the premises during the term, it would hardly be supposed that the parties intended that the lessee should pay an extraordinary assessment laid upon the premises in view of the permanently increased value of the estate by reason of the public improvement in the vicinity, unless the terms used were such as to admit of no other construction. The contrary presumption is stronger or weaker according to the length of the term of the lease. * * *"
The same thought was expressed by Judge Williams in Wilkinson v. Collyer, 13 O.B.D. 1 (1884), where the tenant contracted to pay "all rates, taxes and assessments payable in respect for the premises during the term. * * * This is not a question of mere words, it is a question of substance. Seeing that the term was for three years only, and the annual rent of the premises but thirty-eight pounds, I cannot think that the parties could have contemplated that such a burden as this would be imposed upon the tenant."
In Chicago Great Western R. Co. v. Kansas City N.W.R. Co., 75 Kan. 167, 88 P. 1085, 12 Ann. Cas. 588 (Sup. Ct. 1907), where one railroad granted to the other the joint use of its property for a period of 999 years, and the lease provided that "taxes on property jointly used shall be included in the cost of maintenance." The court held that in this instance the word "taxes" was to be construed to include assessments for local improvements made against the property specially benefited. The court recognized the rule that a covenant to pay taxes on the part of the tenant binds him to pay only the general taxes. It was said:
"If the instrument is a lease at all, it is a lease for so long a time that it does not fall within the reason of the rule referred to. Its great duration cannot be said merely to diminish the force of the consideration stated  it does away with it altogether. A contract which is to endure for 999 years must be deemed to establish a permanent, not a temporary, condition. The argument which applies in the case of an ordinary lease is here reversed. Just as the courts *115 lean away from a construction which imposes an obligation to pay for permanent improvements upon a tenant who can enjoy them only for a fixed period, so they should lean toward a construction that will compel one who shares their benefits for a practically unlimited time to share also their cost. If special assessments for improvements are not regarded as included within the term `taxes' as used in the contract, it results that all charges of this character accruing within a millenium are to be borne solely by one of two companies, each of which derives an equal advantage from them. Rather than attribute to one of the contracting parties so improvident an agreement, we are constrained to hold that the word `taxes' was used in its broad and general sense, and was intended to include special assessments."
In the analogous case of Evans Theatre Corp. v. DeGive Investment Co., 79 Ga. App. 62, 52 S.E.2d 655 (Ct. App. 1949), the tenant held under a 60 year lease with extensive rights in connection with the use of the premises. The issue was whether the landlord or his tenant should comply with an ordinance requiring the owner to make repairs for safety purposes. The court recognized that the burden of repairs, as with assessments, normally falls upon the landlord, but applied the following rule:
In an estate for years, where the owner of such an estate is to all intents and purposes the owner with unqualified possession, lessee should make necessary repairs contrary to the general rule. The situation is analogous to that of a life tenancy. In fact as to a sixty year estate for years it may be reasonable to conclude that the case is stronger than a life estate. The tenant for years, of an estate for sixty years is properly called the owner, dealt with as such, and considered the owner.
Continuing with the process of analogy brings me to Crewe Corp. v. Feiler, 28 N.J. 316 (1958), wherein our Supreme Court held that a provision in a lease for 15 years, with an option to purchase for a certain amount, under which the lessor agreed to pay promptly municipal real estate taxes was not an agreement by the lessor to pay taxes attributable to improvements made by the lessee for his sole benefit.

*116 CONCLUSION.
An exception to the general rule exists where the lessee is virtually the owner of the premises and is the chief, if not the sole, beneficiary of the improvement.
The undisputed facts of the instant case bring it within the exception. The agreement is for so long a period of time (75 years) that it does not fall within the reason of the general rule. An agreement for so great a duration must be deemed to establish a permanent condition. The argument which applies in the case of an ordinary lease is here reversed.
The tenants are indeed the sole beneficiaries of the improvement. In fact, the term of letting far exceeds the period of usefulness of the improvement for which the special assessment was levied. This court in all justice and fairness must lean toward a construction that will compel one who enjoys the benefit of the improvement for a practicably unlimited time to pay for the same.
It is unnatural and unfair that an expense of this character should fall upon one who derives no benefit and whose rental would be drastically decreased.
There are other cogent reasons for application of the exception. While the intention of the parties to a lease is to be deduced from the language employed by them, nevertheless the words must be given a reasonable construction, if possible, one which will not give to one of the parties an unfair or unreasonable advantage over the other. 16 R.C.L. 698, 699. If the special assessment in the instant case is not regarded as included within the term "taxes," it results that all charges of this and like character occurring within the next 52, and possibly 75, years would have to be borne by the landlord. It is reasonable to state that there is no basis for estimating in advance what may be the amount of such assessment. Who can tell what the growth of the population will be in the vicinity of the improvement. Will there be only a little village or a large city? Will the local *117 improvements which business interest demands be trifling or large in amount? What improvements or replacements will necessity demand? These matters are indefinite and uncertain. Certainly the landlord negotiated the rental in this case without any reference or allowance for special assessment now or in the future. If the landlord is required to pay the present assessment and any future ones his rental income would be greatly reduced and the price he could obtain by a sale would be depressed by reason of the inroads upon the rental value. The landlord would be without any means of recouping or recapturing the decreased rental, being bound by the terms of the lease. On the other hand the tenant enjoys the improvement and also obtains a substantial decrease in fire insurance premiums due to the advent of the water system. Also, he can amortize the cost of all future improvements by decreasing expenditures and increasing rent charged subtenants. In fact, the tenant may make future improvements to the premises which will produce greater rent than now received. The only restriction regarding the use of the premises is that provided for in the agreement, which requires the premises to be returned in as good a state and condition as when demised.
Another forcible reason for application of the exception is found in the tenants' (plaintiffs herein) agreement with their subtenant A & P, whereby they agree to pay "all taxes, assessments and other charges imposed upon the premises hereby demised." It is reasonable to presume that the plaintiffs were induced to assume this obligation because they considered themselves bound to pay under the primary lease, for if they considered that the lessors (defendants herein) were obligated to pay any assessments there would have been no need to establish the responsibility for such assessments as between themselves and their subtenant A & P.
I find that an exception to the general rule exists; that the parties used the word "taxes" in its broad and general sense and intended to include special assessments; that to construe the term "taxes" so as not to include special *118 assessments would undoubtedly give to the tenant an unfair, unreasonable advantage over the landlord.
Accordingly, I construe the term "all taxes" to include not only the present assessment but all future ones as well, thus plaintiffs-tenants are obliged to pay the same.
Counsel may present judgment in accordance herewith.