321 So.2d 466 (1975)
Stella R. THOMPSON et al., Appellants,
v.
FIRST NATIONAL BANK OF HOLLYWOOD, As Trustee, et al., Appellees.
No. 73-1354.
District Court of Appeal of Florida, Fourth District.
October 17, 1975.
Suggestion for Certification Denied November 26, 1975.
William E. Blyler of Patterson, Maloney & Shankweiler, Coral Springs, for appellants.
Jack F. Weins of Abrams, Anton, Robbins, Resnick & Schneider, Hollywood, for appellee-First National Bank of Hollywood.
C.H. Landefeld, Jr., of Landefeld & Romanik, Hollywood, for appellees-Investment Corp. of South Florida and Broward County Kennel Club, Inc.
WALDEN, Chief Judge.
As between lessors or a lessee, who is liable for the payment of a special assessment lien arising out of improvements to the leasehold?
The trial court entered judgment in favor of the lessee. Lessors appeal. We affirm.
Our decision hinges upon the construction to be given the terms of their lease and the application of the general rule as provided by case law.
The lease was entered into in 1948 for a term of five years. There were renewal options for four additional five year terms. In 1949 an additional option was granted for fifty years. In 1953 the options were *467 exercised with the result that the term of the lease would end at the year 2023.
In 1972 the special assessment was imposed for sanitary sewer improvements. Lessee refused to pay.
In 1973 the lessors filed the instant suit against the lessee with its gravamen being expressed in these paragraphs of their complaint.
"8. Under the terms of said lease, the lessees agreed to pay when due all taxes assessed and levied on the leased premises during the term of the lease.
* * * * * *
"11. Plaintiffs have notified Defendant of the imposition of special assessment taxes and demanded Defendant pay the balance of the tax.
"12. Defendant has refused to pay the balance of said tax thereby compelling Plaintiffs to pay the tax to prevent the sale of the leased premises for delinquent taxes.
"13. Defendant's refusal constitutes a breach of the covenants of the lease convering [sic] the leased premises."
After general denial, specific issue was joined by the lessee as reflected in Paragraph 15 of its answer:
"15. As and for its affirmative defense, the Defendant would allege that the lease agreement attached to the Plaintiffs' Complaint as Exhibit `A' does not provide for the payment by the lessee of special assessment taxes but rather by the clear and explicit language contained in paragraph 3 of the lease agreement provides for the payment by the lessee of only `real property taxes and personal property taxes.'"
The critical and determinative lease provision was this:
"3. Tenants agree to pay and discharge, in the name of the Landlords, during each year of said term, in addition to said rent above agreed to be paid, without deduction or abatement for any cause whatsoever, the annual taxes, which may be imposed or assessed against the demised premises or any improvements that may be constructed thereon, or any part thereof, including personal property at any time during the term hereof or any renewal term hereunder, under or by virtue of any present or future law, ordinance or order of the State of Florida, or of the County of Broward, or the City of Hallendale, for so called real property taxes and personal property taxes; ..." (Emphasis supplied.)
More precisely, the issue in the trial court and here is whether the term "annual taxes" found in the lease encompasses "special assessments."
And now to begin, lessors on appeal frankly and correctly concede "... that in the context of landlord-tenant law `special assessments' are not ordinarily embraced by the term `taxes'. Consequently, the provision in a lease calling for payment of `taxes' by the lessee will not under ordinary circumstances render the lessee liable for payment of a subsequently appearing `special assessment.' See Annot., 63 A.L.R. 1387."
By way of slight elaboration as concerns the rule governing liability for special assessments, in the absence of an express, specific and clear agreement in the lease to impose liability upon the lessee, the burden remains upon the lessor. Further, and as conceded, the word "taxes" and the term "special assessments" are not synonymous and an agreement by the tenant to pay taxes is not an agreement to pay special assessments.
A further summarization of the rule, gained from scores of case law decisions in the field of landlord-tenant, are those *468 quotes from 3, Thompson on Real Property, § 1161 Landlord and Tenant (1959):
"While in a general sense the word `taxes' includes special assessments, yet there is a clear distinction between the two; special assessments are a peculiar class of taxes which are laid upon the property benefited according to some equitable rule, while taxes, as generally understood, mean the burdens imposed by the government to defray its expenses. A promise to pay taxes does not apply to a special assessment for the construction of a sewer. A covenant to pay `all taxes or duties levied, or to be levied' does not include a special tax for paving a sidewalk. So, a private assessment for paving a street is not a tax or public due of any kind within the meaning of the covenants in a lease." (Footnotes omitted.) Id. at 610, 611.
We hereby adopt the rule above reflected by authority of and under the rationale of Chicago & W.I.R. Co. v. Chicago & E.I. Ry. Co., 86 F.2d 441 (7th Cir.1936); Carstens v. McLean, 7 F.2d 322 (9th Cir. (1925); Deutsch v. Frey, 36 Ohio App. 226, 173 N.E. 40 (1930); Blake v. Metropolitan Chain Stores, 247 Mich. 73, 225 N.W. 587 (1929); DeClercq v. Barber Asphalt Paving Co., 167 Ill. 215, 47 N.E. 367 (1897); Pettebone v. Smith, 150 Pa. 118, 24 A. 693 (1892); 3, Thompson on Real Property, Landlord and Tenant § 1161 (1959); 51C C.J.S. Landlord & Tenant § 360(4)(b) (1968); see State v. Raulerson, 113 Fla. 147, 151 So. 384 (1933); Gleason v. Dade County, 174 So.2d 466 (3d D.C.A. Fla. 1965); 29A Fla.Jur., Special Assessments § 3 (1967).
Having lost and conceded the issue made by the pleadings in the trial court, lessors suggest here that an exception is warranted.
There is an exception to the general rule when the term is perpetual  a perpetual lease  and there the obligation falls upon the lessee. This is reflected in the cases of City of Norfolk v. J.W. Perry Co., 108 Va. 28, 61 S.E. 867 (1908) (99 year lease renewable forever); or Chicago Great Western Ry. Co. v. Kansas City Northwestern R. Co., 75 Kan. 167, 88 P. 1085 (1907), (999 year lease).
The thesis on which this exception is recognized is that the lessee in such case is in the same position with respect to the property as the ordinary fee simple owner. City of Norfolk v. J.W. Perry Co., supra. A perpetual lease is a fee simple determinable  a conveyance in fee, reserving rent. Penick v. Atkinson, 139 Ga. 649, 77 S.E. 1055 (1913) (lease in perpetuity for a ground rent).
The term perpetual lease is defined in Black's Law Dictionary (Revised 4th Edition 1968) as:
"A lease of lands which may last without limitation as to time; a grant of lands in fee with the reservation of a rent in fee,"
and the term perpetual as:
"Never ceasing; continuous; enduring; lasting; unlimited in respect of time... ."
Similarly defined in Webster's International Dictionary (1966), is perpetual lease:
"A lease renewable forever at the lessee's option." See 50 Am.Jur.2d, Landlord and Tenant §§ 1170, 1254 (1970).
It is clear in our opinion that the lease in question was not a perpetual lease. At the time the bargain was struck in 1948 and the lease terms agreed upon there was a provision for a sure term of five years, only, with option renewal possibilities of four additional five-year terms. At that time, then, the maximum possible term, depending upon the decision of the lessee to exercise the options, was twenty-five years. It is hazarded that lessors would not even bother under those facts to urge that the lease was perpetual. And, as a basic, it is *469 the intention of the parties at the time the agreement was made that should govern.
Does the fact that in 1953 options were exercised and added to a sure termination date of 2023 change the character of the lease to a perpetual one? We think not. The fact that the lease terminates on a date certain is the antithesis of the perpetual lease feature  one having no realistic termination date. See State v. Union Trust Co., 27 Ohio App. 156, 161 N.E. 17 (1927).
Counsel for lessors with dedication and skill challenges us, as we understand it, to disregard the established case law in this area. He asks this court to adopt a new rule based upon a concept of "who gets the benefit," rather than following what he chooses to call "a mechanistic view of what is supposed to be the living law." We have seriously considered this possibility and have reviewed the reasoning of the cases that considered the problem. We must reject the challenge for the reason that the suggestion  to apportion payment of special assessments where the lease is silent as to the liability for payment of these assessments  would create new and worse problems than now exist. It would result in cases where liability would be batted back and forth between parties depending on the facts. Most likely liability would have to be apportioned, based on expert testimony concerning the remaining length of the term, the life and kind of improvements and other factors peculiar to each case. Courts would be in the improper position of making contracts; it would result in uncertainty and increased litigation. Thus, we feel, upon study, the majority view is the better and more preferable one.
As matters stand the parties in negotiating a lease should certainly be able to foresee the possibility of special assessments. Thus, a lessor who wishes to avoid responsibility for improvements to the leasehold can, by the simple expedient of including a specific proviso in the terms of the lease (depending, of course, upon what he can negotiate with the prospective lessee) avoid the burden by shifting it to the lessee.
We accept as true that it will be a hardship for these lessors to pay the assessment, as would be any substantial unexpected debt payment. However, we do not know but what it might well be an equal burden for lessees.
In the final analysis the only way that this court could reverse the judgment would be by judicial legerdemain  to go back to 1948 and rewrite the original lease so as to specifically require the lessee to pay special assessment liens for improvements to the lessor's property. We cannot do so under established law.
We conclude by referring to Efros v. Russo, 68 N.J. Super. 110, 171 A.2d 370 (1961), modified in Efros v. Russo, 71 N.J. Super. 602, 177 A.2d 565 (1961). It is the single case advanced by lessors in support of their position. It cannot be meaningfully distinguished. We feel that it was prompted by hard facts and that it represents the minority view  a minority of one.
All circumstances and suggested authorities considered, it is our decision that the appealed judgment should be affirmed.
Affirmed.
OWEN, J., concurs.
SCHWARTZ, ALAN, Associate Judge, dissents with opinion.
SCHWARTZ, ALAN R., Associate Judge (dissenting).
The real issue in this case, as I see it, is what the Court should say on an issue which, for reasons which seem clear, the contracting parties did not themselves consider and concerning which, therefore, the written lease agreement makes no specific provision  that is, whether the lessor or *470 the lessee should bear the ultimate cost of special assessments for projects which benefit, almost in their entirety, only the leasehold. I believe that we should resolve the issue in the manner in which we must conclude that the parties themselves would have resolved it if they had considered it, in a "reasonable" and "just" manner. See 7 Fla.Jur., Contracts §§ 84, 85, pp. 150-152 and cases cited. It seems obvious that a "reasonable" and "just" construction of the parties' implied intention is that they would have had the burden of the special assessments fall upon the party, or parties, who reaped their benefits. Since that party is admittedly the lessee, and the Court has held instead that the lessor shall pay all the amounts involved, I must respectfully dissent.
When the parties entered into the original lease in 1948, with its five-year term, they could properly have relied upon the "ordinary" implication of the law that, in the absence of any specific provision for special assessments, these amounts would be born by the lessor. See e.g., Chicago & W.I.R. Co. v. Chicago & E.I. Ry. Co., 7 Cir.1936, 86 F.2d 441; Carstens v. McLean, 9 Cir.1925, 7 F.2d 322; 3, Thompson on Real Property, Landlord and Tenant, § 1161 (1959). This is so because the benefit of the projects for which the special assessments were made would almost certainly and predominantly have accrued to the lessor at the conclusion of the relatively short term then involved. One may assume, however, that when the fifty-year option was granted the next year, the parties did not reconsider the inapplicability of this presumption to the very long term lease which then became effected. What has happened, however, as a result of the parties' plain and simple failure to reconsider the matter is that the lessor is to pay special assessments for projects which may not even outlast the termination of the lease in 2023, but the amount of which exceeds, as we are told, the entire rent provided for the property in question. I cannot conceive that this result may be countenanced.
It must be remembered that, in the absence of a specific provision allocating responsibility for the payment of special assessments, the presumption that, in a short term lease, these amounts will be borne by the lessor is just that  a presumption supplied by the law to fill a gap in the agreement. The presumption arises, I think, because it is assumed that the parties would have intended that the landowner whose fee interest is primarily benefited by the projects involved would pay for them. There is no reason why the same assumption as to the bearing of relative burdens should not be indulged when as in this case, the benefits primarily flow to the lessee. The language in 17 C.J.S. Contracts § 319, pp. 739-741, as quoted in James v. Gulf Life Ins. Co., Fla. 1953, 66 So.2d 62, 63, seems entirely appropriate in our resolution of this issue:
"The words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and one which will not give one of them an unfair or unreasonable advantage over the other."
Nor can I agree that the application of a rule of reason to this question, which might well require an apportionment of the special assessments involved as between the lessor and the lessee based upon the benefits each derives from them, would, as the Court suggests, "create new and worse problems than now exist". The "difficulties" of apportioning benefits are just the kinds of problems the courts were established to resolve. I do not think that the burdens created by these "difficulties" are so great as to justify an essentially unreasonable and unjust result. The case of Efros v. Russo, 68 N.J. Super. 110, 171 A.2d 270, mod., 71 N.J. Super. 602, 177 A.2d 565 *471 (1961), cited by the majority, which is directly on point, reaches a correct result upon sound reasoning. I think we should follow it.